# PORTO RICO TAX APPEALS.

## INSULAR MOTOR CORPORATION v. GALLARDO, Treasurer, and forty-two other cases.

(Circuit Court of Appeals, First Circuit. September 25, 1926. On Rehearing, January 7, 1927.)

Nos. 1904, 1908, 1923, 1924, 1940–1949, and 1951–1978.

**1. Taxation ☞604—Illegality of tax alone does not warrant equitable relief.**

The illegality or unconstitutionality of a tax is not sufficient ground for equitable relief.

**2. Courts ☞262(4)—Unless there is no other remedy, federal court will not interfere by injunction with collection of taxes by state.**

Interference of courts of the United States, by injunction, with collection of taxes by a state or with its administration of matters of internal police, can only be justified in a plain case not otherwise remediable.

**3. Territories ☞13—Statutes held intended to confer sovereignty and autonomy on Porto Rico (Foraker and Jones Acts (Comp. St. § 3747; § 3803 et seq.).**

The purpose of the Foraker Act and the Jones Act (Comp. St. § 3747 et seq. and section 3803a et seq.) was to confer sovereignty on Porto Rico and an autonomy similar to that of the states.

## On Rehearing.

**4. Courts ☞262(1)—Porto Rican acts imposing excise taxes and authorizing suits for recovery held to afford but doubtful legal remedy, and to involve multiplicity of suits, as affecting equitable jurisdiction of suit to enjoin collection (Acts Porto Rico 1923, No. 68; Acts 1925, No. 84; Acts 1924, No. 9).**

Under Acts Porto Rico 1923, No. 68, and Acts 1925, No. 84, imposing an excise tax on articles bought, sold, or consumed in Porto Rico, and Acts 1924, No. 9, authorizing any taxpayer to make payment under protest and to sue treasurer of Porto Rico for its recovery, the legal remedy afforded the taxpayer is doubtful, and in any event involves a multiplicity of suits, in view of requirement that taxes be paid monthly, and that protesting taxpayer sue to recover taxes paid under protest within 30 days after each payment; hence equity has jurisdiction of suit to enjoin collection.

**5. Commerce ☞72—Porto Rican tax on sales of goods from the United States held valid (Acts Porto Rico 1923, No. 68; Acts 1925, No. 84).**

Taxes on sales of goods taken into Porto Rico from the United States, imposed by Acts Porto Rico 1923, No. 68, and Acts 1925, No. 84, held valid; commerce between the United States and Porto Rico not being technically interstate commerce.

16 F.(2d)—35

**6. Commerce ☞72—Porto Rican excise tax on articles bought, sold, or consumed, as applied to importations sold in original packages, held invalid (Acts Porto Rico 1923, No. 68; Acts 1925, No. 84).**

Acts Porto Rico 1923, No. 68, and Acts 1925, No. 84 imposing excise tax on articles bought, sold, or consumed in Porto Rico, held invalid in so far as applicable to importations from foreign countries sold by the importers in the original packages.

**7. Commerce ☞72—Porto Rico's right to tax sales of foreign importation is not greater than corresponding state right.**

The right of Porto Rico to tax the sales of foreign importations is not greater than the corresponding right of a state.

**8. Constitutional law ☞283—Taxation ☞40(1)—Porto Rican excise taxes on articles bought, sold, and consumed held not lacking in uniformity or violative of due process requirement (Acts Porto Rico 1923, No. 68; Acts 1925, No. 84).**

Excise taxes on articles bought, sold, and consumed in Porto Rico, imposed by Acts Porto Rico 1923, No. 68, and Acts 1925, No. 84, held not lacking in uniformity or violative of due process requirement.

Appeals from the District Court of the United States for the District of Porto Rico; Wells, Judge.

Suit in equity by the Insular Motor Corporation and by numerous other complainants against Juan G. Gallardo, Treasurer of Porto Rico. Decrees for defendant, and complainants appeal. Decrees in certain cases affirmed, and in others vacated, and cases remanded.

Francis G. Caffey, of New York City (George W. Study, of New York City, and Cay. Coll y Cuchi and Gustavo Cruzado Silva, both of San Juan, Porto Rico, on the brief), for appellants Insular Motor Corporation and others.

Carroll G. Walter, of New York City (Vicente Zayas Pizarro, of Ponce, Porto Rico, on the brief), for appellants Forteza and others.

Carroll G. Walter, of New York City (J. Henri Brown, of San Juan, Porto Rico, on the brief), for appellants Valdez and others.

Nelson Gammans, of New York City (Benicio Sanchez Castano, of San Juan, Porto Rico, on the brief), for complainant appellants.

Russell H. Brennan, of Washington, D. C., and J. A. Lopez Acosta, Asst. Atty. Gen. (George C. Butte, Atty. Gen., on the brief), for appellee.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

JOHNSON, Circuit Judge. All these cases raise the question whether the District Court of the United States for Porto Rico had equitable jurisdiction, because the complainants did not have a plain, adequate, and complete remedy at law.

July 28, 1923, the Porto Rican Legislature enacted a law whose title is "The Excise Tax Law of Porto Rico." Under title 2, part 1, § 20, the act (No. 68) provided for the levying and collection, at one time only, of an internal revenue tax upon a long list of articles "produced, manufactured, sold or consumed in Porto Rico."

Section 33 of the act is as follows:

"The tax hereby prescribed on articles for sale, use, consumption or exhibition in Porto Rico, except as provided in section 29 of this act [which relates to the tax upon articles manufactured or produced in Porto Rico] shall be levied as soon as they are on the market in possession of a dealer or commission merchant or the representative thereof in this island, who shall be responsible for the payment of said taxes upon transferring said articles to another dealer or consumer, or upon acquiring them or having them in his possession, and who shall pay such taxes in one of the two following forms in accordance with such regulations as the treasurer of Porto Rico may prescribe for the purpose: (a) Upon acquiring the taxable articles and having them in his possession, by making entries of receipt and delivery in the stock and receipt and delivery book, and by simultaneously paying the tax by cancelling the corresponding stamps on an internal revenue invoice; or (b) as he disposes of the taxable articles. Persons acquiring taxable articles through channels other than the aforesaid dealers or commission merchants or their representatives, shall pay said taxes as soon as they obtain possession of the articles and in accordance with the definition of ad valorem contained in this act.

"Dealers shall be responsible for the payment of said taxes when they sell any taxable article to a consumer. The consumer shall be responsible for the payment of said tax when he acquires taxable articles, if such tax shall not have been paid."

Section 35 provides in part as follows:

"From and after the date on which this act takes effect, every person, who, by himself or through his agents or representatives, acquires taxable articles for sale or transfer to another merchant or consumer, and on which the taxes specified by this act have not been paid, shall keep in his commercial establishment, from which it shall not be removed, except by authorization of the treasurer of Porto Rico, an official book wherein entries shall be made of all taxable articles at the time they are acquired, and the corresponding entry at time of selling or otherwise disposing of them, and further, furnish all other information that the treasurer of Porto Rico may by regulation prescribe for the purpose of determining the value and other circumstances in connection with such articles."

Some of these cases pray for an injunction to restrain the treasurer of Porto Rico from collecting taxes levied under the provisions of this act.

By an act approved August 20, 1925, the Legislative Assembly of Porto Rico enacted a law to supersede the act of 1923, but providing that taxes due under the law repealed should remain in force and the treasurer of Porto Rico be empowered to make collection thereof in the same manner as provided in the repealed laws. Under this act of 1925 a tax was authorized to be levied upon a long list of articles "sold, transferred, used or consumed in Porto Rico." The tax imposed by this act is attacked as illegal in the other cases and an injunction is sought to prevent its collection.

June 23, 1924, the Legislative Assembly of Porto Rico passed a law entitled "an act providing for the payment of taxes under protest," etc. (No. 9), as follows:

"Section 1. Whenever a taxpayer believes that he should not pay a' tax or part thereof because he understands that it is illegal, excessive or wrongful, he shall, however, have the obligation to pay the same in full upon request of the collector of taxes of his district, or of the official in charge of the collection of taxes, and shall ask the said collector or the said official in charge of the collection of taxes, should he desire to make any claim, to endorse the tax receipt specifically stating whether the said protest refers to the whole or to a part of the tax paid under protest, and setting forth the exact amount protested. The said endorsement shall be signed by the taxpayer and by the collector or officer in charge of the collection of taxes.

"Section 2. After payment is made, the collector of taxes or the official in charge of the collection of taxes, shall cover the sum collected into the treasury of Porto Rico, reporting to the treasurer the total

amount of the tax, as well as the part thereof paid under protest.

"Section 3. The moment that a tax paid under protest is received, the part thereof not protested, if there be any, shall be considered as all other receipts from taxes, the amount of which is to be applied to the obligations of the insular government, and in the case of property taxes the part of said tax pertaining to the respective municipalities pursuant to law, shall be paid over to them. The protested part shall be covered into a special fund to be known as 'Taxes Paid under Protest Trust Fund.'

"Section 4. A taxpayer who shall have paid under protest the whole or part of any tax shall, within a term of not to exceed thirty days from and after the date of payment, sue the treasurer of Porto Rico in a court of competent jurisdiction to secure the return of the amount protested. The treasurer of Porto Rico, through the Attorney General or through the official designated by the latter from his department, shall answer the said suit within the term granted by law for the filing of answers and shall make therein, in their order, allegations to strike out particulars of the complaint and demurrers.

"When the case is ready for trial the court before which the action is pending shall fix the day for the trial thereof without the necessity of a request from the parties, first serving due notice on them.

"When final decision is rendered, if favorable to the taxpayer, the treasurer of Porto Rico shall proceed to return to him the amount directed in the decision to be charged against the fund 'Taxes Paid under Protest Trust Fund,' referred to in section 3 hereof.

"If the decision be favorable to the people of Porto Rico the treasurer shall cover from the fund known as 'Taxes Paid under Protest Trust Fund,' into the proper fund such amount of the tax, as directed by the court in its decision, turning over to the respective municipalities the proportion established by law in cases of property taxes.

"Section 5. Either party may appeal to a higher court by filing in the court a quo his appeal within ten days after the decision is rendered, as provided by section 4 of this act: Provided, that if the taxpayer be the appellant he shall file, together with the petition for appeal and in the court appealed from, a bond in such sum as the court shall fix to answer for such costs, expenses, and damages as the people of Porto Rico might suffer by reason of said action.

"The said appeal shall be prosecuted pursuant to the provisions of law for appeals in civil cases, and the court of appeals shall hold the hearing with preference over any other matter pending before it.

"Section 6. Any taxpayer filing a suit against the treasurer of Porto Rico in accordance with the provisions of this act shall attach to the said suit a receipt for the tax paid under protest, or a certified copy of said receipt.

"Section 7. That the sum of fifteen thousand ($15,000) dollars or such part thereof as may be necessary is hereby appropriated, out of any funds in the insular treasury, not otherwise appropriated, for the payment by the treasurer of Porto Rico of such costs as by judgment of any competent court may be allowed to any taxpayer who shall have brought suit pursuant to this act.

"Section 8. Act No. 17 of May 13, 1920, as well as all laws or parts of laws in conflict herewith are hereby repealed: Provided, that any action, proceeding or right arising from and exercised under the act hereby repealed, shall continue under the protection and provisions thereof until its termination.

"Section 9. It is hereby declared that an emergency exists for the immediate taking effect of this act, and therefore the same shall take effect immediately after its approval."

This act does provide a plain, adequate, and complete remedy at law for the recovery of taxes paid under protest, and which was open to the appellants in all of these cases before us. The District Court so held, and we think this was correct.

In West India Oil Co. v. Gallardo (C. C. A.) 6 F.(2d) 523, the Porto Rican act of 1923 was under consideration, as well as the remedy at law which was afforded by the Public Acts of Porto Rico passed in 1920, No. 17. It was there pointed out that the protesting taxpayer, who afterwards attempted to recover a tax paid under protest, must annex to his complaint "a certificate from the office of the treasurer, setting forth that he has paid all his taxes," and it was there held that the right to sue under such conditions did not constitute a plain and adequate remedy at law.

The objectionable features which were pointed out were eradicated by the Act of June 23, 1924.

There was no occasion, therefore, for the District Court to consider other questions, after having found that the taxpayer had a plain, adequate, and complete remedy at law

in all of these cases, and all should have been dismissed, leaving the appellants to their remedy at law for the recovery of taxes paid under protest. The appellants, while admitting that the illegality or unconstitutionality of a tax is not of itself ground for equitable relief in the courts of the United States, still claim that additional equities are alleged which would give the federal court equitable jurisdiction.

[1] That the illegality or unconstitutionality of a law is not sufficient ground for equitable relief has been many times stated by the Supreme Court.

In Boise Artesian Hot & Cold Water Co. v. Boise City, 213 U. S. 276, 282, 29 S. Ct. 426, 428 (53 L. Ed. 796), the court said:

"It has been held uniformly that the illegality or unconstitutionality of a state or municipal tax or imposition is not of itself a ground for equitable relief in the courts of the United States," and that, "in order to give equity jurisdiction, there must be shown, in addition to the illegality or unconstitutionality of the tax or imposition, other circumstances bringing the case under some recognized head of equity jurisdiction, before the remedy by injunction can be awarded. The leading case on this subject is Dows v. Chicago, 11 Wall. 108 [20 L. Ed. 65]."

In Dodge v. Osborn, 240 U. S. 118, 36 S. Ct. 275, 60 L. Ed. 557, in which the legality and constitutionality of the Income Tax Law of 1913 was attacked, on the ground that, unless the collection of taxes assessed under this law was enjoined, many suits would be brought for the recovery of taxes, and that, as the Income Tax Law made the tax a lien upon the taxpayer's property, the assessment of taxes would constitute a cloud on his title, the court said:

"But these allegations are wholly inadequate, under the hypothesis which we have assumed solely for the sake of the argument, to sustain jurisdiction, since it is apparent on their face they allege no ground for equitable relief independent of the mere complaint that the tax is illegal and unconstitutional and should not be enforced—allegations which, if recognized as a basis for equitable jurisdiction, would take every case where a tax was assailed because of its unconstitutionality out of the provisions of the statute and thus render it nugatory, while it is obvious that the statute plainly forbids the enjoining of a tax, unless by some extraordinary and entirely exceptional circumstance its provisions are not applicable."

[2] The interference of the courts of the United States by injunction with the collection of taxes by a state or with its administration of matters of internal police can only be justified in a plain case not otherwise remediable. Arkansas Building & Loan Association v. Madden, 175 U. S. 269, 273, 20 S. Ct. 119, 44 L. Ed. 159. See, also, Long v. Norman et al., 289 F. 5, a case in this circuit.

[3] It was the purpose of the Foraker Act (Comp. St. § 3747 et seq.) and the Jones Act (Comp. St. § 3803a et seq.), which succeeded it, to confer sovereignty upon Porto Rico and an autonomy similar to that of the states. Gromer v. Standard Dredging Co., 224 U. S. 362, 32 S. Ct. 499, 56 L. Ed. 801; Porto Rico v. Rosaly, 227 U. S. 270, 33 S. Ct. 352, 57 L. Ed. 507.

The right to tax, for the purposes of government, one of the attributes of sovereignty, was conferred upon Porto Rico by Congress, and there is a stronger reason for applying the above rule to Porto Rico than to the states, in order that it may not be hampered and obstructed in raising revenue for the administration of its government. Congress has recognized the necessity of preventing the embarrassment of the United States in the collection of taxes assessed under the internal revenue laws by enacting section 3224 Rev. St. (Comp. St. § 5947), providing that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court."

While we think this section is not applicable to Porto Rico, as pressed upon us in argument, yet, the principle involved is, and there are as strong reasons for its application to Porto Rico as to the United States.

We have therefore reached the conclusion that all these cases should be remanded to the District Court of Porto Rico with instructions to dismiss them for want of equitable jurisdiction, without prejudice to the right of the appellants to bring actions at law in accordance with the provisions of the Act of June 23, 1924, and the amendments thereto.

The decree of the District Court is affirmed in each case, with costs in this court to the appellee.

### On Rehearing.

William C. Rigby, of Washington, D. C., for appellee.

PER CURIAM. [4] In these Porto Rican tax cases, attacking the validity of taxes

levied under the Acts of July 28, 1923, No. 68, and of August 20, 1925, this court, in its opinion of September 25, 1926, held against the appellants' claim of equity jurisdiction. Their petition of October 14, 1926, for rehearing was allowed. The cases have been reargued exhaustively and with very great ability and learning on both sides. On full consideration, the conclusions of this court are:

I. As the Attorney General of Porto Rico concedes the correctness of the decisions of this court in Camunas v. Porto Rico, 272 F. 924, and West India Oil Co. v. Gallardo, 6 F.(2d) 523, the question of jurisdiction in equity turns entirely upon the construction to be given to the Porto Rican legislation of 1924, Act No. 9, and 1925, Act No. 84. This court does not now decide that under that legislation actions at law to recover taxes paid under protest may not be maintained in the federal court. But whether, as against objection such jurisdiction can be sustained, is not entirely plain. The Legislature of Porto Rico might well make it plain, as did the Legislature of Massachusetts, by a simple statute quoted in Long v. Norman (C. C. A.) 289 F. 5, 8. Apart from this doubt (Dawson v. Kentucky Distilleries Co., 255 U. S. 288, 296, 41 S. Ct. 272, 65 L. Ed. 638), the remedy at law is inadequate. For the taxes in question must be paid monthly, and the protesting taxpayer must within thirty days after each payment bring his suit at law against the Treasurer. This involves multiplicity of suits by the same party to enforce the same right, and falls outside the rule laid down in Dodge v. Osborn, 240 U. S. 118, 121, 36 S. Ct. 275, 60 L. Ed. 557. Jurisdiction in equity must be sustained. Risty v. Chic., R. I. & Pac. R. R., 270 U. S. 378, 46 S. Ct. 236, 70 L. Ed. 641; Greene v. Louisville, etc., R. R. Co., 244 U. S. 499, 507, 37 S. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917E, 88; Chic., etc., R. R. Co. v. Osborne, 265 U. S. 14, 16, 44 S. Ct. 431, 68 L. Ed. 878.

[5] II. On the merits: The taxes on sales of goods taken into Porto Rico from the United States must be held valid under Sonneborn v. Cureton, 262 U. S. 506, 43 S. Ct. 643, 67 L. Ed. 1095, and West India Oil Co. v. Gallardo, supra. While commerce between the United States and Porto Rico is not, technically, interstate commerce, the right of Porto Rico to tax the sales of goods arriving therein from the United States is not less than the right of a state to tax the sales of goods arriving therein in interstate commerce. Brown v. Maryland, 12 Wheat. 419, 6 L. Ed. 678, is not applicable to importations (so called) from the United States.

[6, 7] III. Brown v. Maryland is applicable to importations from foreign countries sold by the importers in the original packages, and the taxes as to such importations so sold must be enjoined. But the invalidity of such taxes does not affect other taxes. Compare section 108 of the act. Sales of such goods, not by the importers in the original packages, are taxable. Waring v. The Mayor, 8 Wall. 110, 19 L. Ed. 342. The right of Porto Rico to tax the sales of foreign importations is not greater than the corresponding right of a state.

[8] IV. The appellants' minor contentions as to lack of uniformity and of due process are admittedly inconsistent with the decision of this court in West India Oil Co. v. Gallardo, supra. We regard the decision in that case as sound in principle and as fully supported by such cases as Stebbins v. Riley, 268 U. S. 137, 141, 142, 45 S. Ct. 424, 69 L. Ed. 884, 44 A. L. R. 1454; Billings v. United States, 232 U. S. 261, 280, 281, 34 S. Ct. 421, 58 L. Ed. 596; Flint v. Stone Tracy Co., 220 U. S. 107, 151, 152, 31 S. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312; Knowlton v. Moore, 178 U. S. 41, 20 S. Ct. 747, 44 L. Ed. 969.

V. Pending these appeals, under order of court, the taxes in question have been impounded in the hands of the clerk of the court below. The results are:

(1) In Nos. 1944, 1945, 1946, 1947 and 1949, there must be decrees providing for:

(a) Injunctions against the collection of taxes on sales in the original packages by the importers of foreign goods.

(b) Repayment to the plaintiffs of the impounded proceeds of such taxes.

(c) Payment to the defendant of the proceeds of all other taxes.

(d) If in any of these cases question arises as to the proper division of the impounded funds under (b) and (c), supra, such cases are to be remanded to the court below for determination of that question.

(2) In Nos. 1903, 1904, 1908, 1923, 1924, 1940, 1941, 1942, 1943, 1955, 1956, 1957, 1958, 1959, 1960, 1962, 1964, 1965, 1966, 1967, 1968, 1969, 1971, 1972, 1975, 1976, 1977, and 1978, the money impounded is to be paid over to the defendant and the bills dismissed.

(3) In Nos. 1948, 1951, 1952, 1953, 1954, 1961, 1963, 1970, 1973, and 1974 (the balance of the cases), the present records seem inadequate for mandates for final decrees; these cases are therefore remanded to the court below for further proceedings not inconsistent with this opinion.

(4) No costs are to be allowed to either side, in any of these cases, in this court.

The decrees of this court of September 25, 1926, are vacated, and the following decrees will be entered:

In each case enumerated in V, (1) and (3), supra, the decree of the District Court is vacated, and the case is remanded to that court for further proceedings not inconsistent with this opinion.

In each case enumerated in V, (2), supra, the decree of the District Court is affirmed; neither party recovers costs on appeal.