### SANCHEZ MORALES & CO., Inc., v. GALLARDO.

### PORTO RICO AUTOMOBILE CO., Inc., v. SAME.

Circuit Court of Appeals, First Circuit.
April 11, 1927.

Nos. 2003, 2004.

1. **Taxation** ⚖⟲40(1)—**Porto Rican excise tax statute held not to discriminate against imported articles (Acts Porto Rico 1923, No. 68).**

Acts Porto Rico 1923, No. 68, imposing an excise taxe on sale of certain articles in Porto Rico based on cost of article there, which in case of imports included transportation, does not discriminate against imported articles.

2. **Taxation** ⚖⟲40(7)—**Porto Rican excise tax statute held not to produce lack of uniformity because of definition of ad valorem (Acts Porto Rico 1923, No. 68, § 6, as amended by Acts Sp. Sess. 1923, No. 1).**

As regards ad valorem excise tax on sales of articles, Acts Porto Rico 1923, No. 68, by reason of definition of ad valorem in section 6, as amended by Acts Sp. Sess. 1923, No. 1, *held* not to produce objectionable lack of uniformity because in some cases articles may be sold at less than cost and in others with varying profits.

3. **Taxation** ⚖⟲40(7)—**Excise taxes cannot be escaped on theory that such excises bear too heavily on other dealers.**

Parties doing business along lines of normal profits cannot escape excise taxes on any theory that such excises bear too heavily on sellers at less than cost.

4. **Taxation** ⚖⟲40(1)—**Unavoidable inequalities in result of excise statute, due only to inequalities in business conditions and activities, are not ground of complaint.**

An excise tax statute is not open to attack on ground of inequality because of unavoidable inequalities of result not originating in the law but growing out of inequalities in business conditions and activities.

Appeals from the District Court of the United States for the District of Porto Rico; Ira K. Wiels, Judge.

Suits by Sanchez Morales & Company, Inc., and the Porto Rico Automobile Company, Inc., against Juan G. Gallardo, Treasurer of Porto Rico. From adverse decrees, plaintiffs appeal. Affirmed.

Carroll G. Walter, of New York City (J. Henri Brown, of San Juan, Porto Rico, on the brief) for appellants.

William C. Rigby, of Washington, D. C. (George C. Butte, of San Juan, Porto Rico, and Russell H. Brennan, of Washington, D. C., on the brief), for appellee.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. These two tax cases are conceded by learned counsel for the appellants to be indistinguishable from 29 of the 43 cases disposed of in a single opinion of this court on January 7, 1927. 16 F.(2d) 545.

The court below sustained demurrers and dismissed the bills, which allege that the plaintiffs are dealers in motor vehicles and accessories, pneumatic tires, phonographs, radio sets, pianos, pianolas, typewriters, safes, glass show counters, cash registers, and adding machines, all transported into Porto Rico from the United States, and that of these articles only glass showcases are manufactured in Porto Rico.

Counsel now urge that this court was wrong in its expressed view (16 F.(2d) 545) that the West India Oil Case, 6 F.(2d) 523, disposed of the minor contentions raised in the 29 cases and now raised in these two cases.

[1] The first contention is stated as follows: "The act of 1923 discriminates against articles manufactured or produced outside of Porto Rico, in that upon such articles the taxes are computed upon a higher basis of value than upon domestic articles; and such discrimination is an unlawful regulation of and burden upon interstate and foreign commerce."

This is plainly unsound. Goods imported from (say) New York are, when landed in Porto Rico, treated by the Tax Act precisely as though manufactured in Porto Rico. Transportation to Porto Rico of New York goods is a part of the basic cost in Porto Rico of the imported goods. The importer and the local manufacturer are both taxed on the basis of cost in Porto Rico, plus a profit of 10 per cent., unless adjusted to a lower rate under section 6 of the Act of 1923, No. 68, as amended by Laws Sp. Sess. 1920, No. 1. The proper comparison is not between manufacturing costs in New York—followed perhaps by a sale in New York to the importer at a price increased by the manufacturer's profit—and the manufacturing cost of goods produced in Porto Rico. When in Porto Rico, whether manufactured in Porto Rico or in the States and transported to Porto Rico, the first sale is taxed. There is no discrimination against goods produced in the States. The New York manufacturer can compete with the Porto Rican manufacturer only by putting his goods into the Porto Rican market. The local manufacturer is entitled to such advantage as accrues from his remoteness from the large manufacturing centers. Whether the amount of local competitive manufacturing is sufficient to make appellants' claim, even if found legal, of any significance, is, on this record, doubtful. But it is not sound.

[2] Appellants' second contention is thus stated:

"The definition of the term 'ad valorem,' contained in section 6 of the Act of 1923 (substantially identical with section 4 of the Act of 1925), causes an inequality of valuation for the purpose of fixing the tax, and thus makes the statute operate unequally as between members of the same class, and thereby causes, not only a lack of uniformity, but also a denial of the equal protection of the laws, in violation of the Organic Act of Porto Rico and the Fourteenth Amendment of the Constitution."

Section 6 (as amended by Acts Sp. Sess. 1923, No. 1, § 1) reads:

"Sec. 6. *Definition of the Phrase 'Ad Valorem.'*—For the purposes of this act the phrase 'ad valorem' shall be construed to mean the cost of an article after it is in the possession of a person, plus a reasonable benefit to be estimated at ten per cent. over the amount of said cost, unless such person proves, to the satisfaction of the treasurer of Porto Rico, that the profit obtained on such article is less than ten per cent.; provided, that the word 'person' as used in this section shall be given the meaning given thereto in section 7 hereof."

The argument is that, as some sales may possibly be made at less than cost and others at a profit in excess of 10 per cent., the necessary result is lack of the uniformity required by the Organic Act.

This contention is based on a misapprehension of the fundamental nature of the tax. It is not a tax on property or on profits. It is an excise tax levied on the "sale, use, consumption or exhibition in Porto Rico" of the named articles. There is no "classification" as the term is used in most of the cases cited and relied upon. In title II, entitled "Excise and License Taxes," part I deals with excise taxes, in section 20, with 51 subdivisions; part II deals with "license taxes," in section 21, with 42 subdivisions. In section 20, about 20 of the excise taxes are specific, e. g., $1 a liter on brandy; about 30 are ad valorem: a

few are mixed. The ad valorem taxes are: At 5 per cent. on sales, etc., of 7 articles; at 10 per cent. on 16 articles; others at 15, 30, and 40 per cent. Perhaps even more varied are the license taxes imposed, each three months, on numerous kinds of manufacturers and dealers; some of them divided into as many as five classes, the gradation to be made by the treasurer (section 23) "according to the relative importance of the establishment as measured by the volume of business transacted, irrespective of the net profit or gain derived therefrom, but with due regard to the business or industry to which it bears most intimate similarity."

Thus profits are expressly excluded as a basis for the license tax. All licenses of the same class pay the same license fees, even though doing unequal amounts of business or deriving unequal profits from the same volume of business.

Turning to the ad valorem excises, there is no classification of the various dealers and manufacturers affected; but all dealers in or manufacturers of the same articles are required to pay the same percentage on their sales. There is no discrimination between large and small, between citizens and foreigners, or otherwise. The tax is uniform when the business conditions are uniform—a result impossible of exact attainment.

It is of course true that, as about 90 per cent. of the base on which the tax is computed is the cost, the tax may affect differently dealers and manufacturers who buy or produce the same articles at different costs. The shrewd and successful buyer or manufacturer will pay a less tax because of his ability or good fortune as a buyer or manufacturer. And the ingenious and attractive seller may sell at a better profit than his less efficient competitor and thus feel the tax less. Of course competition will tend to drive competitors toward equality of selling price. But (to repeat) the tax is not on profits; it does not attempt to create equality in business or economic result; it is uniform in incidence when the business conditions are uniform. This is enough.

The provision for increasing the cost by a hypothetical 10 per cent. profit is, on analysis, of negligible significance. As noted above, the majority of the ad valorem excises are at 10 per cent. Obviously, a 10 per cent. tax on cost plus 10 per cent. profit would be 11 per cent. of cost, or 1 per cent. more than the profit. All normal business would therefore be done on a profit of perhaps about 20 per cent., leaving 9 per cent. net. The 40

per cent. tax on arms and ammunition would require a 44 per cent. mark-up to break even.

On the seven 5 per cent. excises, there is a remote possibility of an advantageous adjustment under section 6 to less than a 10 per cent. profit. A 5 per cent. tax on cost plus (say) a 5 per cent. profit would be 5.25 per cent. of cost as compared with 5.5 per cent. of cost if a 10 per cent. profit be assumed. A difference of one-fourth of 1 per cent. would not be enough to induce a dealer to scale his profits to 5 per cent. and then seek reduction of the tax under section 6.

For practical purposes, the excises will be computed on cost plus 10 per cent. At any rate, all the taxes imposed on the present plaintiffs and their competitors are 10 per cent., requiring, as noted above, additions of 11 per cent. or more for business not headed for bankruptcy.

[3] Of course dealers may, in closing-out or slaughter sales, sell at cost or less and yet be taxed on the original cost, even after obtaining the relief contemplated by section 6. Whether such victims of theoretically excessive taxation would be legally aggrieved is a question not presented on this record. Compare section 41, authorizing exemption when the property is destroyed or becomes unfit for sales. Certainly taxpayers doing business along lines of normal profits cannot escape excise taxes on the theory that such excises bear too heavily on sellers at less than cost— an unwholesome sort of competition, entitled to no discriminating favor in public policy, as it certainly has none from dealers carrying on business with the usual and desirable motive of making a profit thereby.

[4] Tax laws are practical undertakings. They deal with normal business enterprises. The requirement of uniformity does not extend to the utterly impractical limit of compelling mathematical or scientific equality of incidence. No property tax accomplishes that result. The owner of realty, unrented or leased to an irresponsible tenant, finds his tax a heavy burden, while his neighboring owner of property leased at a good and promptly paid rental finds the tax easy to pay. The shrewd buyer of foreign goods subject to an ad valorem import tax pays less tariff, and thus adds to the margin between him and his less efficient competing importer. But these inequalities of result grow out of inequalities in business conditions and activities, not possible of control by law. They are unavoidable; they do not originate in the law. They are not cases of intentional and

arbitrary discrimination. Sunday Lake Iron Co. v. Wakefield, 247 U. S. 350, 38 S. Ct. 495, 62 L. Ed. 1154. Even if these taxes were, as they are not, property taxes, we could not hold the method of computation as "so palpably arbitrary or unreasonable as to render it invalid." Swiss Oil Corp. v. Shanks (February 21, 1927) 47 S. Ct. 393, 71 L. Ed. ——.

The cases fall plainly within the rule that no classification or method of computing taxes to be held invalid by the courts "unless it precludes the assumption that (it) was made in the exercise of legislative judgment and discretion." Stebbins v. Riley, 268 U. S. 137, 143, 45 S. Ct. 424, 426 (69 L. Ed. 884, 44 A. L. R. 1454).

In each case the decree of the District Court is affirmed, with costs to the appellee.