**WEST INDIA OIL CO. v. SANCHO, Treasurer.**
**No. 3501.**

Circuit Court of Appeals, First Circuit.
Dec. 15, 1939.

James R. Beverley, of San Juan, P. R. (Jose Lopez Baralt, of San Juan, P. R., on the brief), for appellant.

William Cattron Rigby, of Washington, D. C. (B. Fernandez Garcia, of San Juan, P. R., and Nathan R. Margold, of Washington, D. C., on the brief), for appellee.

Before WILSON and MAGRUDER Circuit Judges, and McLELLAN, District Judge.

McLELLAN, District Judge.

The question presented by this appeal is whether oil brought to Puerto Rico, deposited in bonded tanks and later pursuant to a contract for its sale drawn off into ships for use therein on the high seas and elsewhere is subject to a sales tax by virtue of the following Puerto Rican statutory provisions:

"Internal Revenue Law of Puerto Rico, as amended by Act No. 17 of June 3, 1927; Laws of 1927, Special Session, pp. 458–486.

"Sec. 62. There shall be levied and collected, once only, on the sale of any article the object of commerce, not taxed under Section 16 of this Act or exempted from taxation as provided in Section 83 of the same, and at the time of sale in Porto Rico, a tax of two (2) per cent on the price or value of the daily sales of such articles, whether such sales are for cash or on credit, which tax shall be paid at the end of each month by the person making such sale." (Page 472.)

"Sec. 16 (a). There shall be levied and collected, once only, on all articles included in section 62 of this Act, a tax of two (2) per centum ad valorem, as provided in section 4 hereof, when said articles are manufactured, produced or introduced in Porto Rico for domestic use or consumption * * * but payment shall be made before said articles are withdrawn from the factory or from the custody of the post office or customs authorities, or from the express or steamship agencies, in such manner as the Treasurer of Porto Rico may by regulation prescribe." (Page 484.)

The District Court of San Juan concluded that the transactions in question were not taxable; the Supreme Court of Puerto Rico reversed the District Court's judgment. The pertinent facts may be stated briefly. The appellant, West India Oil Company (P. R.) is a corporation chartered under the laws of Puerto Rico. Having obtained a United States license, it maintained two bonded tanks for receiving and depositing fuel oil brought from foreign countries. When so deposited in a bonded tank the oil is within the joint custody of United States Government Customs officials and the proprietor and can be withdrawn only with the consent of the Customs officials. Tit. 19 U.S.C. § 1555, 19 U.S.C.A. § 1555. It remains in the tank until it is either exported, delivered to steamers for use for their engines as fuel, or delivered to purchasers for use in Puerto Rico. In the last case, it is entered through customs and the duty paid. In and before August, 1935, the Appellant withdrew and delivered about 46,000,000 gallons of fuel oil from the bonded tanks and delivered it to steamers which had purchased it for use in their voyages to the Continent and to foreign countries.

When oil was to be sold in this way, contracts for its sale were signed in New York by the Standard Oil Company of New York and the purchasing steamers or their owners. The appellant did not put in evidence any such contracts and except for the suggestion that the appellant is one of the New York Company's subsidiaries, all that we know is that the Standard Oil Company of New York notified the appellant of the signing of the contracts, which in turn delivered the oil to the steamers requesting it. When such a delivery is to be made the customs office is notified and the delivery supervised by its officials. In such cases, no duties are exacted by the United States. The oil is thus delivered to the steamers. Bills therefor are presented and paid in New York.

If, as the District Court said, the oil was not subject to local taxation while in the bonded tanks, a question which we are not called upon to decide, this would not prevent the imposition of a tax upon its sale to the steamers for use in their voyages. The sales tax is not a property tax. It is founded upon Congressional authority given to the Legislature by the Organic Act of Puerto Rico, Tit. 48 U.S.C. § 741, 48 U.S.C.A. § 741, to lay Internal Revenue taxes. It is an excise tax to be levied upon the exercise of a privilege. Indian Motocycle Co. v. United States, 283 U.S. 570, 51 S.Ct. 601, 75 L.Ed. 1277; Patton v. Brady, 184 U.S. 608, 22 S.Ct. 493, 46 L.Ed. 713. It falls in the same category with the tax on the manufacturer of sugar discussed in Loiza Sugar Co. v. Porto Rico, 1 Cir., 57 F.2d 705. No question as to the right to tax property while within the control of the Customs officials is here presented. The tax is upon transactions which involve the release of such control and are consummated contemporaneously with or after such control is relinquished. The power of the Puerto Rican Government to impose a tax of the kind here involved does not seem to us doubtful. And we think the provisions of the statute imposing an ad valorem tax "on the sale of any articles the object of commerce * * * at the time of the sale in Puerto Rico" are applicable. The fact that the consummation of the sales by the delivery of the oil in Puerto Rico was preceded by a contract between the buyers and the Standard Oil Company of New York in that State leads to no different conclusion.

The situs of this tangible and movable personal property was in Puerto Rico. On principle and by the weight of authority title to such chattels passes according to the law of the place where they are. Beale, The Conflict of Laws, Sections 255.3 and 255.5, and cases there cited. Such is the rule in New York, where the contract between the Standard Oil Company and the buyers of the oil was made. D'-Ivernois v. Leavitt, 23 Barb., N.Y., 63. As heretofore intimated we are left in the dark as to the terms of the contracts made in New York. Whatever those terms were, we think upon this record that title to the oil passed in Puerto Rico and that under the governing principles of the territorial law, the transactions here considered are not tax free by reason of the fact that contracts for the sale of the oil were made in New York or the fact that bills therefor were presented and paid in that State. It is unnecessary here to discuss the Sales Act or the Common Law as to the circumstances under which the making of a contract for sale operates to pass the title of the goods before delivery to the buyer. The authorities cited in the opinion of the Insular Supreme Court clearly support the view that in Puerto Rico title to the goods does not pass before delivery to the buyer, and that without such delivery, the sale is not consummated. The decision that within the meaning of the Section of the Internal Revenue Law of Puerto Rico imposing a tax "on the sale of any article of commerce * * *· and at the time of the sale in Puerto Rico" the sale does not occur before delivery, involves the construction of a local statute and a consideration of the local Civil Code, derived from the Spanish Code. We have no need here to invoke the well established rule that the decisions of the local Supreme Court interpreting local statutes and laws are entitled to great respect and should be sustained in the absence of clear or manifest error. Diaz v. Gonzalez, 261 U.S. 102, 105, 43 S. Ct. 286, 67 L.Ed. 550; Bonet v. Yabucoa Sugar Co., 306 U.S. 505, 509, 59 S.Ct. 626, 83 L.Ed. 946. The Insular Court's determination that the sales occurred in Puerto Rico and that they were not consummated "until the oil was taken from the tank, measured and delivered to the ships" seems right to us.

It is urged on the appellant's behalf that the transactions at bar are not taxable because of the provision in the Organic Law of Puerto Rico that "no export duties shall be levied or collected * * *." Tit. 48 U.S.C. § 741, 48 U.S.C.A. § 741. But the fuel oil was not destined for a foreign port. As stated in Swan & Finch Company v. United States, 190 U.S. 143, 23 S.Ct. 702, 703, 47 L.Ed. 984, "whatever primary meaning be indicated by its derivation, the word 'export,' as used in the Constitution and laws of the United States, generally means the transportation of goods from this to a foreign country." We do not regard the oil put on board for consumption at sea as "exports" within the meaning of Section 3 of the Organic Act of Puerto Rico, 48 U.S.C.A. § 741.

Resisting the appellant's contention that the fuel oil was at all times within the channels of foreign and interstate commerce and that a tax on its sale would be a burden on such commerce, the appellee calls our attention to Lugo v. Suazo, 1 Cir., 59 F.2d 386, 390, where this court said that "the commerce clause does not extend to Puerto Rico". Compare Inter-Island Steam Navigation Co. v. Territory of Hawaii, 9 Cir., 96 F.2d 412. But we do not rest our decision here on inapplicability of the Commerce Clause. Assuming without intimating its relevancy, we think the Insular Supreme Court was right in concluding that there was here no such direct burden on commerce as to invalidate the tax. And in view of its opinion in which the authorities are considered, a detailed discussion of this aspect of the case is unnecessary. The appellant in the course of its regular business of selling oil caused some of it to be stored in its own tanks for indefinite periods whence it was sometimes sold for domestic use, sometimes for export and at other times for delivery to ships for consumption at sea. During all the time, though subject to the joint custody of the United States Customs officials, it received the protection of the insular laws. The oil was held for sale and its transportation halted for that purpose. It was then sold or its sale consummated in Insular territory by a domestic corporation, not for export but for use at sea and we discover no valid reason for invalidating an excise tax based on the privilege of conducting such business.

The judgment of the Supreme Court of Puerto Rico is affirmed, with costs to the appellee.