WEST INDIA OIL CO. (PUERTO RICO) v. DOME-
NECH, TREASURER OF PUERTO RICO.

No. 26. Argued October 23, 24, 1940.—Decided November 12, 1940.

*Mr. James R. Beverley* for petitioner.

*Mr. William Cattron Rigby,* with whom *Messrs. George A. Malcolm,* Attorney General of Puerto Rico, and *Nathan R. Margold* were on the brief, for respondent.

MR. JUSTICE STONE delivered the opinion of the Court.

The question is whether a Puerto Rico sales tax imposed by §§ 16 (a), 62 of the Internal Revenue Act of Puerto Rico, (as amended by Act No. 17 of June 3, 1927, Laws of 1927, Special Session, pp. 458–486), is invalid because as applied it infringes Congressional regulations of foreign and domestic commerce effected by the tariff laws and customs regulations of the United States. The tax is challenged so far as it is laid. on the delivery, in consummation of. sales, of fuel oil which has previously been imported in bond and then withdrawn, duty free, for delivery to vessels in Puerto Rican ports for use as fuel upon their voyages to ports of the United States or foreign countries. The Court of Appeals for the First Circuit has affirmed the judgment of the Supreme Court of Puerto Rico sustaining the tax, 54 P. R. Dec. 732 (Spanish edition). 108 F. 2d 144. We granted certiorari, 309 U. S. 652, because the question presented is of importance in the administration of the customs, laws of the United States and of the revenue laws of Puerto Rico, and because of an asserted conflict with our decision in *McGoldrick* v. *Gulf Oil Corp.*, 309 U. S. 414.

Petitioner brings fuel oil from a foreign country, where it is produced and refined, to Puerto Rico, where it is stored in bonded warehouses in the joint custody of peti-

tioner and the customs officers of the United States, as provided by § 555 of the Tariff Act of 1930, 46 Stat. 743, 19 U. S. C. § 1555, and applicable customs regulations. From time to time petitioner withdraws some of the oil from bond, for disposition and use in Puerto Rico. Petitioner also withdraws some of the oil, with which we are now concerned, and delivers it to vessels in Puerto Rican ports upon sales for use as ships' stores in the manner already indicated. Upon such withdrawal and delivery the import tax imposed on fuel oil by § 601 (a) (c) (4) of the Revenue Act of 1932, 47 Stat. 169, 259–260, and required by § 601 (b) to be "treated for the purposes of all provisions of law relating to the customs revenue as a duty imposed by . . . [the Tariff Act of 1930]" is remitted pursuant to § 309 of the Tariff Act of 1930, 46 Stat. 590, 690 and § 630 of the Act of 1932, added by the amendment of June 16, 1933, 48 Stat. 256.

Section 309 authorizes withdrawal from bonded warehouse, duty free under treasury regulations, of articles of foreign manufacture or production for use as ships' supplies, and §§ 601 (b), 630 of the Revenue Act of 1932 extend the benefit of those provisions to fuel oil imported in bond and withdrawn and "sold for use as fuel . . . on vessels . . . engaged in foreign trade or trade . . . between the United States and any of its possessions." See *McGoldrick* v. *Gulf Oil Corp., supra,* 423 *et seq.*

It is true, as petitioner urges, that in *McGoldrick* v. *Gulf Oil Corp., supra,* we held that the provisions of the Tariff Act of 1930 and of the Revenue Act of 1932, and the customs regulations relating to bonded manufacturing warehouses, when applied to crude oil imported into New York and there manufactured into fuel oil in bonded warehouses and withdrawn duty free for sale as ships' stores, manifested an intention of Congress to regulate the foreign commerce involved, in the interest of and for the protection of American manufacturers, and that a

state tax on the sale was invalid because in conflict with such regulation. We do not stop to consider whether, as respondent insists, a different result should be reached here because the imported oil was imported in its manufactured state and was not, as in the *Gulf Oil* case, earmarked for manufacture in bonded warehouse and withdrawn after manufacture for sale as ships' stores. We need not now determine whether standing alone the statutory characterization of the oil sold as ships' supplies as "exports" within the meaning of the customs laws, § 309 (b) Tariff Act of 1930; § 630 of the Revenue Act of 1932, does more than make applicable to it the provisions of the Tariff Act of 1930 for remission of customs duties upon merchandise imported in bond and later exported. Nor is it necessary to examine the various arguments advanced that the tax, without the consent of Congress, is an infringement of its constitutional power over commerce. For we think a sufficient answer to all the contentions of petitioner is to be found in the Congressional consent to the tax given by the March 4, 1927 amendment of § 3 of the Organic Act of Puerto Rico, 44 Stat. 1418.

Before the amendment, § 3 had prohibited duties "on exports from Puerto Rico," but had provided that "taxes and assessments on property, internal revenue" etc., "may be imposed for the purposes of the insular and municipal governments, respectively, as may be provided and defined by the Legislature of Puerto Rico. . . ." Congress, by the amendment, added to § 3 a proviso "that the internal-revenue taxes levied by the Legislature of Puerto Rico in pursuance of the authority granted by this Act on articles, goods, wares or merchandise may be levied and collected as such legislature may direct, on the articles subject to said tax, as soon as the same are manufactured, sold, used, or brought into the island: *Provided,* That no discrimination be made between the articles imported

from the United States or foreign countries and similar articles produced or manufactured in Puerto Rico. The officials of the Customs and Postal Services of the United States are hereby directed to assist the appropriate officials of the Puerto Rican government in the collection of these taxes."

The plain purport of the words of this proviso is that any tax authorized by the Organic Act with respect to articles of domestic production may likewise be levied with respect to imported articles "as soon as . . . [they] . . . are manufactured, sold, used, or brought into the island" provided only that there be no tax discrimination between articles brought from the United States and foreign countries and domestic articles. The amendment seems to have been occasioned by doubts which had arisen whether merchandise brought to the Island from the United States was subject to local taxation while in the original package and also whether the merchandise has, while in the control of the customs authorities, the same status as respects local taxation as goods similarly controlled which have been imported from foreign countries and whether the power of the insular legislature to tax imports from foreign countries was any greater than that of the states which are forbidden, by Clause 2, of § 10 of Art. I of the Constitution, to tax imports and exports without the consent of Congress. S. Rept. No. 1011, 69th Cong., 1st Sess., p. 2. Cf. *Sonneborn Bros.* v. *Cureton*, 262 U. S. 506, with *Baldwin* v. *Seelig*, 294 U. S. 511, 526. These questions were involved in *Puerto Rico Tax Appeals,* 16 F. 2d 545, decided January 7, 1927, shortly before the amendment of § 3 of the Organic Act. The judgments in that case were reversed and the suits ordered dismissed by this Court for want of jurisdiction, October 24, 1927 (275 U. S. 56), after the amendment to the Organic Act of March 4, 1927, which deprived the federal courts of jurisdiction in the pending and other like suits to restrain the assessment and collection of Puerto Rico taxes.

28

Moreover practical difficulties appear to have been experienced in levying insular taxes upon goods on their arrival from the United States and while in the custody or control of postal or customs officers, due to the fact that the local tax while in its practical effect a customs duty was not collected by postal or customs officials. S. Rept. No. 1011, 69th Cong., 1st Sess. The doubts and the difficulty were removed by the amendment to § 3, giving the Congressional consent that articles should be subject to the taxing jurisdiction of the Puerto Rico legislatur' as soon as brought into the Island whether from the United States or from foreign countries, and directing that the United States customs officials and postal service should aid local officers in the collection of the tax. The effect of the broad language of the amendment was not only to subject to taxation all imported goods, whether from the United States or foreign countries, when brought into the Island in the original package, but to neutralize the regulatory effect of the customs laws and regulations in so far as they protected articles from local taxation after their arrival. Merchandise in the original package was thus subjected to tax when brought into the Island without regard to customs regulations. It would seem plain that other merchandise not in the original package was left in no more favorable situation and in the face of the broad and unambiguous language of the statute we cannot say that the one, more than the other, is immune from local taxation. Even if the oil sold as ships' stores were to be regarded as "exported," cf. *Swan & Finch Co. v. United States,* 190 U. S. 143, 145; *United States* v. *Chavez,* 228 U. S. 525; *Cunard S. S. Co.* v. *Mellon,* 262 U. S. 100, the tax is one clearly within the terms of the proviso added to § 3 and so is one consented to by the United States.

The procedure for segregating imported merchandise in bond without payment of customs duties pending its

withdrawal and shipment out of the country is old, long antedating the amendment of § 3 of the Organic Act. See *McGoldrick* v. *Gulf Oil Corp., supra.* The later Acts of 1930 and 1932 thus placed fuel oil, so far as Puerto Rico is concerned, in the same category as other merchandise brought into the Island in the original package or in bond which, by virtue of the proviso of § 3 of the Organic Act, was made subject to local taxation as soon as brought into the Island. The extension by Congress to fuel oil of the benefits of the customs laws and regulations affecting merchandise imported in bond did not imply that those laws and regulations were to be given any different effect in Puerto Rico than they then were permitted to have under § 3 of the Organic Act. In any event, considering the relationship of general Congressional legislation to legislation specifically applicable to our territories and possessions, repeals by implication are not to be favored and will not be adjudged unless the legislative intention to repeal is clear. *Posadas* v. *National City Bank,* 296 U. S. 497, 501 *et seq.*

*Affirmed.*

MR. JUSTICE REED, dissenting.

This judgment should be reversed on the authority of *McGoldrick* v. *Gulf Oil Corp.,* 309 U. S. 414. That case has just established the superiority of a federal statute for the protection of commerce over a state's right to levy a sales tax. In it we pointed out that it was inconsistent with the plenary power of Congress over commerce to permit local exactions to cut into the competitive advantages provided through the remission of customs duties to suppliers and exporters by the ship stores and fuel oil provisions of § 309 of the Tariff Act of 1930 and § 601 (b) and §.630 of the Revenue Act of 1932. Congress authorized these advantages to give our ship chan-

dlers opportunity to compete for this trade on an even basis with nonresidents. The *Gulf Oil* case held that imported fuel oil carried in New York bonded warehouses for export might be sold, under Treasury oversight, to noncoastwise shipping without payment of the city sales tax. The opinion demonstrated that the purpose of Congress would be thwarted if local taxation were permitted to interfere. The same holding in my opinion is required here.

Fuel oil imports into Puerto Rico are governed by the same tariff provisions, regulations for bonded warehouses and deliveries in bond to purchasers for use in overseas voyages as are those into the continental United States. The language of the Butler Act is held by the Court to require different treatment in New York or Puerto Rico of the same situation, despite the tax inequality produced between the respective taxing units. One would expect that Puerto Rico would have no more authority than a state to levy a sales tax on bonded fuel oil; but this Court's ruling permits it to tax where New York failed.

The authority is said to lie in the grant by Congress to Puerto Rico of the right to tax "as soon as the same [articles subject to tax] are manufactured, sold, used, or brought into the Island." As the fuel oil is brought into the Island, this Court's opinion concludes, it is taxable. The report upon the Butler Act points out the reason for its enactment.[1] It was to enable Puerto Rico to tax

---

[1] "In making use of the authority granted by section 3 to levy and collect internal-revenue taxes the government of Porto Rico has found itself unable to collect said taxes on articles purchased in and sent from the United States to Porto Rico by mail, or sometimes when said articles are sent by vessel, as the courts have held that the post-office or customs officials have no authority to withhold [the] delivery of such articles subject to the internal-revenue tax until the tax is paid, as such tax collected in this manner is in effect a customs duty. In other words, the courts have held that the internal-revenue tax can

in the original package. It should take more than a general tax authorization to destroy the symmetry of the federal control over imports bonded for export and to permit local taxation in Puerto Rico of what is free from local taxation in New York. "Brought" should be construed to mean when goods pass from the customs control to private control, or the authority to tax of the Butler Act should be held to be subject to the federal power of tax exemption exercised generally in favor of fuel oil by § 309 of the Tariff Act of 1930 and § 601 (b) and § 630 of the Revenue Act of 1932. Since the right to tax imports in the original package, granted Puerto Rico by the Butler Act, merely makes goods in the original package in Puerto Rico taxable as other goods in the common mass of taxable property, the Butler Act gives to Puerto Rico no broader power to tax oil sales than was

---

not be collected while the article subject to the tax is in the original package.

"This condition of affairs has practically nullified the power of the insular government to levy internal-revenue taxes, and therefore the efficacy of this source of revenue has been seriously impaired.

"For the purpose of righting this situation, a new provision is added to section 3, which states as follows:

"*And it is further provided,* That the internal-revenue taxes levied by the Legislature of Porto Rico in pursuance of the authority granted by this act on articles, goods, wares, or merchandise may be levied and collected as such legislature may direct, on the articles subject to said tax, as soon as the same are manufactured, sold, used, or brought into the island: *Provided,* That no discrimination in rates be made between the articles imported from the United States or foreign countries and similar articles produced or manufactured in Porto Rico. The officials of the Customs and Postal Services of the United States are hereby directed to assist the appropriate officials of the Porto Rican government in the collection of these taxes.

"It is expected that the government of Porto Rico will so make use of this power as not to unnecessarily place any barriers in the way of the free-trade conditions now existing between [Porto Rico] and the mainland, which is the principal factor in the progress and prosperity of Porto Rico." (Senate Rep. No. 1011, 69th Cong., 1st Sess., p. 2.)

32

possessed by New York, by virtue of its sovereign power, in the *Gulf Oil* case. *McGoldrick* v. *Berwind-White Co.*, 309 U. S. 33. Nothing requires us to frustrate the legislative policy of free competition in world markets.

The decree below should be reversed.

MR. JUSTICE ROBERTS joins in this opinion.