294

BUSCAGLIA, Treasurer of Puerto Rico, v.
BOWIE et al.

No. 3905.

Circuit Court of Appeals, First Circuit.

Dec. 17, 1943.

Bernard Chertcoff, Sp. Atty., to Atty.
Gen., Samuel O. Clark, Jr., Asst. Atty.
Gen., and Sewall Key and Samuel H. Levy,
Sp. Assts. to Atty. Gen., for appellant.

E. T. Fiddler, of San Juan, Puerto Rico,
for appellees.

Before MAGRUDER, MAHONEY, and
WOODBURY, Circuit Judges.

MAHONEY, Circuit Judge.

The plaintiffs, citizens and residents
of the United States, trustees of an express
trust known as Eastern Sugar Associates,
brought this action to recover from the
Treasurer of Puerto Rico the sum of $21,-
680.24 paid under protest as taxes, penalties

and interest on molasses produced and stored in Puerto Rico and shipped to the United States pursuant to contracts of sale. Jurisdiction is based on the fact that each of the plaintiffs is a citizen of a state in the United States and none of them is domiciled in Puerto Rico. 52 Stat. 118, 48 U.S.C.A. § 863.

The taxes were levied under the provisions of Act No. 254 of the Legislature of Puerto Rico approved May 15, 1938, and effective on August 13, 1938, and Act No. 267 approved May 15, 1938, and effective upon date of approval, as amended. Judgment was entered for the plaintiffs in the sum of $21,680.24 with interest and the defendant has appealed.

Before the effective date of Act No. 267, the plaintiffs had produced and stored in tanks 3,057,719 gallons of molasses and before the effective date of Act No. 254 they had produced and stored in tanks 4,152,867 gallons of molasses. Under Acts Nos. 267 and 254 as originally passed no penalties were imposed for failure to pay the tax within the time prescribed. In 1941, the Legislature in amending Act No. 267 passed Act No. 171 imposing penalties, and made it retroactive as to the effective date of Act No. 267. Then in 1942 it passed Act No. 242 retroactively revising Act No. 267 as amended by Act No. 171 and making the penalty provisions prospective only.

The question before us is whether Acts Nos. 254 and 267 apply to molasses produced in Puerto Rico before their effective dates but sold after those dates in continental United States, or whether the tax applies only to a sale in Puerto Rico.

The taxpayer conceded during the oral argument before us that the tax under Act No. 254[1] was properly levied and collected and that he cannot retain that part of the judgment given by the lower court. That Act imposed a tax of one-fifth of a cent "on each gallon of sugar cane molasses produced, used, sold, or consumed in, or imported into Puerto Rico; * * *". By this statute the tax is on every sale of molasses over which Puerto Rico may be said to have power or jurisdiction to tax and not merely on molasses sold in Puerto Rico.

▮ Although the trial judge made no express finding, it is clear from taxpayer's exhibit "F" that the molasses was in Puerto Rico at the time the contracts of sale were entered into and subsequently was shipped to the United States pursuant to those contracts. We think that the district court by its finding that the molasses was "disposed of * * * by sale in continental United States" meant that delivery took place and title passed to the buyer on the continent. Such was the assumption of both parties at the oral argument. The presence of the molasses in Puerto Rico at the time of the contracts of sale and its shipment from there pursuant to the contracts are sufficient bases to give Puerto Rico jurisdiction to tax no matter where the sale took place. West India Oil Co. v. Domenech, 1940, 311 U.S. 20, 61 S.Ct. 90, 85 L.Ed. 16; cf. Wisconsin v. J. C. Penney Co., 1940, 311 U.S. 435, 61 S.Ct. 246, 85 L.Ed. 267, 130 A.L.R. 1229; State Tax Commission of Utah v. Aldrich, 1942, 316 U.S. 174, 62 S. Ct. 1008, 86 L.Ed. 1358, 139 A.L.R. 1436.

We turn now to that part of the judgment which the taxpayer seeks to retain. Section 1 of Act No. 267 is set out in the margin.[2] It imposes "once only" a tax of one-fourth of a cent "on each gallon of molasses brought into, or manufactured, sold, consumed, or otherwise disposed of for consumption in, Puerto Rico; * * *".

---

1 "Act No. 254.

"Section 1. There is hereby levied, and the Treasurer of Puerto Rico is directed to collect, a tax of one-fifth (1/5) of a cent on each gallon of sugar cane molasses produced, used, sold, or consumed in, or imported into Puerto Rico; * * *".

2 "Section 1.—By this Act there shall be levied, collected, and paid as an internal-revenue tax, once only, the sum of one-fourth (1/4) of a cent on each gallon of molasses brought into, or manufactured, sold, consumed, or otherwise disposed of for consumption in, Puerto Rico; and such tax shall be collected by the Treasurer of Puerto Rico through the affixing and canceling of internal-revenue stamps which he may prescribe for the purpose; Provided, further, That the said tax shall have the nature of an internal-revenue tax and shall, therefore, be uniform and general both for the article produced and brought to Puerto Rico and for the article manufactured or produced in this Island; and such tax shall be collected by the Treasurer of Puerto Rico subject to the provisions of the Internal Revenue Act, as soon as such article is manufactured or produced in, or brought into, Puerto Rico, through the affixing and cancelling of internal-revenue stamps on the documents prescribed for the purpose by the Insular Treasurer.

Since the molasses was manufactured before the effective date of the Act, no attempt is made to impose the tax on the production. The only claim is that the transaction comes under the word "sold'" in the Act. The government contends that our construction of this Act must be guided by that of the Supreme Court of Puerto Rico in Mayaguez Sugar Co. v. Carreras, decided January 16, 1942, but that court was faced with an entirely different question and its opinion is of no aid to us here. That case concerned a sale in Puerto Rico of molasses from one Puerto Rican firm to another. It was argued that since it was the buyer's intention to export the molasses, no tax was due since the sale was not for consumption in Puerto Rico. It was held that the phrase "for consumption in, Puerto Rico" applied only to "otherwise disposed of" and did not apply to "brought into, manufactured, sold, consumed". We think the interpretation by the Supreme Court of Puerto Rico that the statute does not mean "sold for consumption in Puerto Rico" was indisputably correct. Equally consistent with that opinion the Supreme Court of Puerto Rico-could hold that the words "Puerto Rioo" taken alone did apply to each of the prior verbs.

To reach the construction sought by the government, we would carry the words "Puerto Rico" back to the first verb in the series, as we must because that verb "brought" is followed by the preposition "into". We would then read the following verbs "manufactured, sold, consumed" without reference to "Puerto Rico" and then finally attach the words "Puerto Rico" again to the final phrase "or otherwise disposed of for consumption in". Standing alone, we might say that such was a conceivable construction of the Act, although inartificially drafted to say the least.

 Support may be found for this in what is called the doctrine of the "last antecedent", which requires in statutory construction that qualifying words, where no contrary intention appears, be ordinarily applied solely to the words or phrase immediately preceding. But in the first place this would be contrary to the natural or common sense meaning of the statute. As is said in Lewis, Sutherland Statutory Construction, Vol. 2, § 420:

"This principle [last antecedent] is of no great force: it is only operative when there is nothing in the statute indicating that the relative words or qualifying provision is intended to have a different effect. And very slight indication of legislative purpose or a parity of reason, or the natural and common sense reading of the statute, may overturn it and give it a more comprehensive application."

In Great Western Ry. v. Swinden, etc., Ry., L.R. 9 App.Cas. 787, 808, it is said that: "as a matter of ordinary construction where several words are followed by a general expression which is as much applicable to the first and other words as to the last, that expression is not limited to the last but applied to all."

This last rule of statutory construction is followed by the Supreme Court in Porto Rico Ry., Light & Power Co. v. Mor, 253 U.S. 345, 348, 40 S.Ct. 516, 518, 64 L.Ed. 944, where it says: "When several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all."

The words we are concerned with are "in, Puerto Rico". We can see no reason why the legislature should require that "otherwise disposed of for consumption" be in Puerto Rico if it did not also mean that "consumed" be in Puerto Rico, and if "consumed" be in 'Puerto Rico then it seems clear that "manufactured" and "sold" also be in Puerto Rico. The purpose of the comma between the "in" and "Puerto Rico" is merely to prevent the reading of a double preposition after the word "brought". Further on, in a proviso in the same section we find the language that the tax is to be collected when the article is "manufactured or produced in, or brought into, Puerto Rico". The word "produced" as used here is a synonym for "manufactured". Since the tax is on the product when produced in Puerto Rico, likewise it is on it when manufactured in Puerto Rico. Thus in the first part of the section we find that the legislature intended the words "in, Puerto Rico" to be read with "manufactured", making it read "manufactured in Puerto Rico". It would be straining the language not to apply the phrase "in, Puerto Rico" to each of the other serialized verbs.

It is further brought out that such must have been the meaning of the legislature

when by Act No. 171[3] of 1941 it retroactively amended Act 267 so as to make Section 1 levy a tax of one-fourth of a cent on each gallon of molasses "in any manner produced, used, sold, or consumed in Puerto Rico. * * *" Here it is clear that the common sense meaning requires that the phrase "in Puerto Rico" be read after each of the verbs "produced, used, sold." The language of Act No. 242 of 1942[4] by which the legislature again seeks to modify retroactively Act No. 267 is much the same as the original 267 and must be interpreted the same way so as to impose a tax on the sale of molasses only when the sale is in Puerto Rico.

In 1941 the legislature omitted the phrase "or otherwise disposed of for consumption" from the statute in Act No. 171. Had the meaning of Act No. 267 been as the government contends, the legislature would also have dropped the words "in, Puerto Rico" (the "brought into" being handled in a separate clause in Act 171) but that was not the meaning. It had meant "in, Puerto Rico" to apply to each of the verbs so it did not drop the phrase but left it as it was, merely omitting the words "or otherwise disposed of for consumption" and the taxing provision then read: "or consumed in Puerto Rico." Thus it is clear that "in, Puerto Rico" was intended to go with "consumed" in Act No. 267, and no construction could then prevent its going with the other verbs in the series, "manufactured" and "sold".

█ Unlike the situation before the Supreme Court of Puerto Rico in the Mayaguez Sugar case, supra, the construction favoring the taxpayer in this case will not seriously impair the effect of the statute. If the Supreme Court of Puerto Rico had decided otherwise, the statute would practically have been destroyed as a taxing measure because only molasses "sold for consumption in Puerto Rico" or "manufactured for consumption in Puerto Rico" would be taxed; and, molasses production being an export industry, the great bulk of the revenue sought by the legislature would escape the tax. However, in the case before us this decision does not leave any tax loopholes for future exploitation because as to any molasses produced hereafter there will be a tax on its manufacture, or, if it is manufactured outside, there will be a tax when it is brought in. The only molasses that is not taxed is molasses manufactured before the effective date of the Act and sold thereafter outside of Puerto Rico. Any sale of molasses in Puerto Rico will, of course, be taxed.

Whether or not it be that the Legislature of Puerto Rico thought it could only tax a sale in Puerto Rico, an examination of other statutes indicates that it was its custom only to tax sales in Puerto Rico. See for example the statute set out in West India Oil Co. v. Sancho, 1 Cir., 108 F.2d 144, 146:

"Sec. 62. There shall be levied and collected, once only, on the sale of any article the object of commerce, not taxed under Section 16 of this Act or exempted from taxation as provided in Section 83 of the same, and at the time of *sale in Puerto Rico,* a tax of two (2) per cent on the price or value of the daily sales of such articles, whether such sales are for cash or on credit, which tax shall be paid at the end of each month by the person making such sale." (Italics supplied.)

See also the statute in San Juan Trading Co. v. Sancho, 1 Cir., 114 F.2d 969, 970, footnote 1:

"Section 16. There shall be collected and paid, once only, an internal revenue tax on each of the following articles:

"7. Matches: On matches, whether sulphur, safety, friction, or fuses, or by whatever name known, sold, manufactured, transported, transferred, used, or consumed, in, or brought into, Puerto Rico * * *."

From the setting off of the preposition "in" by commas on both sides in this last

[3] "Section 1. The title and sections 1, 2, 3, 4, and 5 of Act No. 267, approved May 15, 1938, are hereby amended, and the sections which appear from the following text are hereby added, so that said Act No. 267, of May 15, 1938, shall read in its entirety as follows: * * *

"Section 1.—There shall be levied, collected, and paid, as an internal-revenue tax, the sum of one-fourth (1/4) of a cent on each gallon of cane molasses in any manner produced, used, sold, or consumed in Puerto Rico, or introduced into Puerto Rico for sale, use, or consumption * * *".

[4] "Section 1.—By this Act there shall be levied, collected, and paid as an internal-revenue tax, once only, the sum of one-fourth (1/4) of a cent on each gallon of cane molasses brought into, or manufactured, sold, transferred, produced, used, or consumed in, Puerto Rico."

statute it is plain that the preposition "in" goes with all of the preceding verbs and it is obvious that the Puerto Rican Legislature so intended.

It is not necessary to consider the question whether Act No. 267 by reason of other sections is in contravention of the Organic Act.

The judgment of the District Court is reversed in part and affirmed in part and the case is remanded to that court for further proceedings not inconsistent with this opinion; the appellees recover costs of appeal.