BUSCAGLIA, Treasurer of Puerto Rico, v.
LIGGETT & MYERS TOBACCO
CO., Inc.

No. 4045.

Circuit Court of Appeals, First Circuit.

May 29, 1945.

Arcilio Alvarado, of San Juan, Puerto Rico, for appellant.

H. S. McConnell, of San Juan, Puerto Rico (Seymour P. Edgerton, and Bingham, Dana & Gould, all of Boston, Mass., of counsel), for appellee.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

MAGRUDER, Circuit Judge.

This is an appeal from a judgment of the Supreme Court of Puerto Rico dated July 28, 1944, ordering the issuance of a writ of mandamus addressed to the Treasurer of Puerto Rico, the appellant herein, directing him to turn over to appellee Liggett & Myers Tobacco Company, Inc., internal revenue stamps in denominations and amounts corresponding to stamps which were affixed and canceled on packages of cigarettes shipped from the United States to Puerto Rico and destroyed before reaching the island as a result of the sinking of the vessel by enemy action.

Section 16(10) of the Internal Revenue Law of Puerto Rico (Act No. 85, Laws of P.R. 1925, p. 584) imposed an internal revenue tax, to be paid once only, on "all cigarettes sold, transferred, used or consumed in Porto Rico." It is provided in Section 32 that every package containing cigarettes "shall bear a securely attached internal revenue stamp, which shall be affixed and cancelled in such form as the Treasurer of Porto Rico may by regulation prescribe." Section 35 provides: "That all excise taxes provided for in this Act shall be paid by affixing and cancelling internal revenue stamps on such documents and articles, as for such purpose the Treasurer of Porto Rico may prescribe. Such stamps shall be furnished by the Treasurer of Porto Rico to collectors of internal reve-

nue in such quantities as may be necessary for local needs * * *."

To facilitate compliance with these provisions of law, the Treasurer has set up in New York City a subordinate agency for the selling of internal revenue stamps for cigarettes "so that the importers may purchase stamps thru the manufacturers, which may affix them to the packages while at the factory, thus avoiding the opening of the cartons and the cellophane covering each package of cigarettes, as would be the case if the stamps were to be affixed after the cigarettes were received in Puerto Rico." Such internal revenue stamps are not purchased as stamp collectors' items but to be used as evidence of the payment of taxes which Puerto Rico is lawfully empowered to impose. When the stamps so purchased are affixed and canceled before the commodity is shipped to Puerto Rico, or otherwise before a taxable event has occurred, there has been in effect a prepayment of the tax. As might be expected, it has frequently happened that the commodity has been destroyed, or damaged so as to be rendered valueless, before any tax has accrued thereon; and hence the intended use of the canceled stamps as evidencing the payment of a tax lawfully due has been frustrated.

In such cases, a decent thing for the insular government to do would be to issue to the shipper or importer internal revenue stamps of a face value equivalent to the canceled stamps. It is clear that the Treasurer would have had authority to make such provision by formal written regulation under his broad power in Section 94 of the Internal Revenue Law to "issue such regulations as may be necessary to enforce the provisions of this Act." The Treasurer did not do this. But the evidence in the record satisfied the court below, and satisfies us, that the Treasurer instituted, and has long maintained, an administrative practice of replacing canceled stamps upon satisfactory proof that the cigarettes to which they were affixed had been destroyed prior to the occurrence of a taxable event.

Appellant has been at great pains to argue that, since the passage of the Internal Revenue Law in 1925, various supplemental enactments, in 1939, 1941, 1942 and 1943, have extended the cigarette tax to the act of importing the commodity into Puerto Rico,[1] and that therefore the aforesaid practice has been invalidated so far as it involved replacement of internal revenue stamps after the commodity had been introduced into Puerto Rico, for this would amount to condoning a tax already accrued. The argument is wholly irrelevant, for in the case at bar the undisputed facts show that the cigarettes never came within the taxing jurisdiction of Puerto Rico.

Appellee, who owns a cigarette factory in Richmond, Virginia, bought in January and February, 1942, from the Puerto Rico Stamp Agent in New York City, internal revenue stamps of the face value of $71,-760. The said stamps were affixed and canceled on packages of cigarettes destined for shipment to Puerto Rico. The shipment was made from Baltimore, Maryland, on February 24, 1942, but the vessel was sunk en route and the shipment was wholly lost. Appellee promptly applied to the Treasurer for replacement of the canceled stamps and received in reply information as to the procedure to be followed and as to the documentary evidence required by the Treasury before refunding the stamps in accordance with the accustomed administrative practice. Appellee furnished the documentary proof required, but the Treasurer declined to issue the substitute stamps.

Thereupon appellee commenced the present litigation by filing in the District Court for the Judicial District of San Juan a petition for a writ of mandamus. The District Judge gave judgment dismissing the petition. Upon appeal, this judgment was reversed by the Supreme Court of Puerto Rico, which entered its own judgment granting a writ of mandamus directing the Treasurer to replace the canceled stamps which were destroyed when the ship went down.

The Supreme Court of Puerto Rico took the view that the well-established administrative practice had the effect of a regulation pursuant to Section 94 of the Internal Revenue Law; and that it "was not indispensable that the practice should appear in writing," citing Haas v. Henkel,

---

[1] In Puerto Rico Ilustrado, Inc., v. Buscaglia, decided by the Supreme Court of Puerto Rico May 4, 1945, that court reserved judgment on whether the insular legislature has "power to impose excise taxes on the mere introduction of goods into Puerto Rico." Cf. West India Oil Co. v. Domenech, 1940, 311 U.S. 20, 61 S.Ct. 90, 86 L.Ed. 16.

1910, 216 U.S. 462, 480, 30 S.Ct. 249, 54 L.Ed. 569. Further, the court held that, once satisfactory proof was furnished that the stamps had been lost or damaged before the article was subject to the tax, the Treasurer "was bound to do his ministerial duty and comply with the practice which he himself had established and which was sanctioned by Section 94 of the Internal Revenue Law."

■ It was called to the attention of the court below that while this litigation was pending in the District Court, the Treasurer replaced stamps in another very similar case, in accordance with his aforesaid administrative practice. It appears that Larus & Brother Company had affixed internal revenue stamps to cigarettes pre-·pared for shipment from continental United States to Puerto Rico. The cigarettes were damaged en route by enemy action and were taken to Miami, Florida, where they were destroyed on June 9, 1943, in the presence of a representative of the Treasurer, and substitute stamps were issued to the claimant. In explanation of that case, appellant in his reply brief can only say that the refund of the stamps to the taxpayer in the Larus case "is justified by the fact that no showing was made to the Treasurer that the taxpayer would be unjustly enriched by the substitution of the stamps or the refund of the value of these twice, first by the insurance company and second by the Treasury of Puerto Rico. That showing was made in the present case and discretion was used here against the taxpayer to avoid its unjust enrichment. The record shows that appellee had already collected the full value of the loss of stamps from the insurance company when its petition was filed with the Treasurer." [2] This unjust enrichment argument seems to have been an afterthought to give an aspect of reasonableness to what otherwise would appear to be arbitrary and discriminatory administrative action. The ground on which the Treasurer disallowed the appellee's application for a refund of the stamps was that

the administrative practice which appellee invoked was "not applicable to your case, inasmuch as such precedents refer to cases in which stamps have been somehow mutilated in the hands of a local buyer," a ground wholly at variance with the Treasurer's action in the Larus case above referred to. The Supreme Court of Puerto Rico rightly held that it was immaterial whether the claimant had been reimbursed by insurance for the lost stamps, for the only effect of such reimbursement would be that the insurance company is subrogated to the claim of the insured, citing Luckenbach v. W. J. McCahan Sugar Co., 1918, 248 U.S. 139, 39 S.Ct. 53, 63 L.Ed. 170, 1 A.L.R. 1522. In the present case the only unjust enrichment would be that of the Insular Treasury if appellant should prevail in his appeal.

The decision of the court below reaches an obviously just result and turns wholly on questions of local law. Appellant insists that it is utterly novel that an administrative practice which the Treasurer was not legally bound to inaugurate may ripen into "law" and impose upon the Treasurer a ministerial duty to conform to the practice in all cases proved to be within its scope. But cf. Nashville, C. & St. L. Ry. v. Browning, 1940, 310 U.S. 362, 369, 60 S.Ct. 968, 84 L.Ed. 1254. It is true that such a doctrine may raise difficulties, not present here, as to how many instances of official action need be proved in order to establish an administrative practice. Also, there may sometimes be trouble in proving in sharp outline just what is the scope of the practice. These difficulties of proof do not compel a rejection of the doctrine; rather, they may merely render the doctrine unavailable in a particular case. What the court below has done has been to interpret Section 94 of the Internal Revenue Law, authorizing the Treasurer to issue necessary regulations, as meaning that the Treasurer may establish such regulations in the informal guise of an administrative practice as well

---

[2] The record contains a letter from the Sea Insurance Company, Limited, of Liverpool, to the Treasurer stating that, after the shipment was lost, "the Sea Insurance Company, Limited, advanced to the Liggett & Myers Tobacco Company the sum of $107,238 which included the amount out-of-pocket for the ·stamps with the understanding that Liggett & Myers Tobacco Company would return the amount of such stamps when they receive refund or credit from the Puerto Rican Department of Finance. Insofar as its interest, if any, is concerned, the Sea Insurance Company, Limited, confirms that it will be entirely in order for the Department of Finance to make the desired refund, duplication or credit for the destroyed stamps directly to Liggett & Myers Tobacco Company, Inc."

as by a more formal written regulation. When the regulation is once established, by either method, it may well be that the Treasurer would have no power to revoke the regulation retroactively so as to cut out rights meanwhile accrued thereunder, in circumstances like the present. See Griswold, A Summary of the Regulations Problem, 54 Harv.L.Rev. 398, 411 (1941). This question may be put to one side, because the Treasurer in rejecting appellee's application did not assert that the practice (i. e., the regulation) had been revoked, but rested on the unfounded claim that the practice did not cover the case. And as we have stated above, the Treasurer has continued to refund stamps in similar cases even after he turned appellee down.

■ After all the admonitions we have received from the Supreme Court of the United States as to the deference which should be accorded to decisions of the Supreme Court of Puerto Rico on matters of local law, this is certainly not a case where we might properly hold the judgment of that court to be "inescapably wrong." Bonet v. Texas Co., 1940, 308 U.S. 463, 471, 60 S.Ct. 349, 84 L.Ed. 401. In De Castro v. Board of Commissioners, 1944, 322 U.S. 451, 64 S.Ct. 1121, 88 L.Ed. 1384, we were told that if "it is found that the rule adopt-

ed by the local tribunal is an intelligible one, not shown to be out of harmony with local law or practice, it is not to be rejected because we think a better [one] could have been devised or because we find it out of harmony with our own traditional system of law and statutory construction." 322 U.S. at pages 458, 459, 64 S.Ct. 1125, 88 L.Ed. 1384. And it must be recognized that the decisions of the Supreme Court of Puerto Rico do themselves constitute an important source of "local law or practice."

■ We denied a motion by appellee for a summary affirmance under our Rule 39,[3] and gave the case careful consideration after full argument and briefs, bearing in mind the recent assurance that the restrictive canon which the United States Supreme Court has imposed upon the exercise of our appellate jurisdiction has not reduced our duty "to the performance of a mere mechanical function" nor minimized "the importance or dignity of the appellate function in such cases." De Castro v. Board of Commissioners, supra, 322 U.S. at pages 454, 458, 64 S.Ct. at pages 1123, 1125, 88 L.Ed. 1384.

The judgment of the Supreme Court of Puerto Rico is affirmed, with costs to the appellee.

[3] The propriety of this rule was discussed in Mercado e Hijos v. Commins, 1944, 322 U.S. 465, 64 S.Ct. 1118, 88 L.Ed. 1396. It has not been our idea, by the use of this rule, to avoid giving due consideration to the questions presented in appeals from the Supreme Court of Puerto Rico concerning matters of local law. Rather, the purpose has been to save needless expense and delay involved in the printing of the record and hearing the case on oral argument. As a matter of fact, a large proportion of the cases coming to us from Puerto Rico in regular course are submitted on brief. The "statement on appeal" which appellants are required to file by our Rule 39 is supposed to contain a succinct statement of the case and of the issues of local law presented, together with appropriate citation of authorities, designed to show that the judgment of the Supreme Court of Puerto Rico is manifestly erroneous. It really amounts to a short brief. If the appellee moves to affirm, under Rule 39b, he may, and usually does, file a brief in support thereof. After we examine the typewritten record, including the opinion of the court below, the statement on appeal, and appellee's brief in support of his motion to affirm, we sometimes find that the judgment of the Supreme Court of Puerto Rico is so "manifestly correct" as to make an appeal therefrom frivolous. We also sometimes find a case presenting fairly debatable questions of law which we would find it puzzling to decide if we were free to take a wholly independent view, but where, from the very fact that the case is a debatable one on its merits, we are morally certain that we should be obliged to affirm the court below, since its judgment is not "inescapably wrong." In both these situations we have conceived it to be proper to affirm under Rule 39b, without having the record printed and the case set down in regular course for oral argument.