**TEXACO PUERTO RICO, INC.,**
Petitioner, Appellant,

v.

**Sol Luis DESCARTES, Treasurer of Puerto Rico, Intervenor, Appellee.**

No. 5856.

United States Court of Appeals
First Circuit.

Heard Feb. 6, 1962.

Decided June 7, 1962.

Carmen B. Hernandez, San Juan, P. R., with whom James R. Beverley, R. Castro Fernandez, and R. Rodriguez Lebron, San Juan, P. R., were on brief, for appellant.

Rodolfo Cruz-Contreras, Asst. Sol. Gen., with whom J. B. Fernandez-Badillo, Sol. Gen., was on brief, for appellee.

Before WOODBURY, Chief Judge, and ALDRICH and SMITH,* Circuit Judges.

WOODBURY, Chief Judge.

This appeal from a judgment of the Supreme Court of Puerto Rico affirming a judgment of the former Tax Court of Puerto Rico dismissing a complaint for refund for excise taxes was taken under § 1293 of Title 28 U.S.C. prior to its repeal on August 30, 1961, by Public Law

---

* Sitting by assignment.

87–189 of the 87th Congress, 75 Stat. 417. The simple facts are stipulated and can be briefly summarized as follows:

 Very early in the morning of January 18, 1948, a tanker from Aruba, Netherlands West Indies, arrived in the harbor of San Juan with a cargo of kerosene destined for Texaco Puerto Rico, Inc. It docked and proceeded to unload but in the process 183,136 gallons of kerosene were spilled into the harbor because Texaco employees on the dock had negligently failed fully to close a valve, and as an added precaution to seal it with so-called "blind flange," in the pipeline through which the kerosene was being pumped from the vessel to Texaco's tanks on shore.

On February 10, 1948, Texaco paid the Treasurer of Puerto Rico $5,494.08 in excise taxes [1] on the spilled kerosene and on April 9, 1948, it petitioned the Treasurer for refund. The Treasurer denied its petition on April 19 and soon thereafter Texaco filed a complaint for refund against the Treasurer in the now superseded Tax Court of Puerto Rico. That court entered judgment on December 7, 1950, dismissing the petition in accordance with its opinion and the Supreme Court of Puerto Rico on certiorari affirmed on March 2, 1961.

The Supreme Court of Puerto Rico held that the kerosene, although spilled into the harbor in the process of unloading, had been "introduced into Puerto Rico" within the meaning of § 16, supra. It said: "On the basis of these facts, which in part were stipulated and in part are proved by the documentary evidence attached to the record, no one can successfully claim that the kerosene in question was not imported into, introduced into or brought to Puerto Rico and that it was never within our jurisdiction for taxing purposes."

This is certainly a reasonable construction to put upon the wording of the local taxing statute quoted in footnote 1 above. We cannot seriously entertain the suggestion that the Supreme Court's interpretation of local law was "inescapably wrong" or "patently erroneous" within the meaning given to these phrases in Bonet v. Texas Company, 308 U.S. 463, 471, 60 S.Ct. 349, 84 L.Ed. 401 (1940), and reiterated in De Castro v. Board of Commissioners, 322 U.S. 451, 64 S.Ct. 1121, 88 L.Ed. 1384 (1944).

 Furthermore, the Supreme Court of Puerto Rico held that Texaco Puerto Rico, Inc., was not entitled to claim exemption under § 16–C of the Internal Revenue Law, Act No. 78 of May 9, 1944, Laws of P.R.1944, pp. 166, 170, as amended by Act No. 426 of May 14, 1947, Laws of P.R.1947, p. 868, quoted so far as pertinent in the margin [2] for the reason that it had failed to provide proof of its right to exemption within 15 days of the date of importation as the

1. Section 16 of Act No. 85 of August 20, 1925, Laws of P.R.1925, pp. 584, 590 as it stood amended in January 1948, by Act No. 116 of May 12, 1943, Laws of P.R. 1943, pp. 334, 338 and by Act No. 158 of May 13, 1941, Laws of P.R.1941, pp. 948, 964, read in material part as follows:

"Section 16.—There shall be collected and paid once only, as an internal-revenue tax on the *following article sold*, transferred, used or consumed in or introduced into Puerto Rico, and on the articles comprised in this section of the law.

\* \* \* \* \*

"29. *Kerosene.*—On all illuminating oils or substitute therefor, sold, transferred, used, or consumed in, or introduced into, · Puerto Rico, a tax of three (3) cents a gallon."

2. "Section 16–C.—The following objects or effects shall not be subject to the payment of the excises levied by this Act:

\* \* \* \* \*

"(b) Those which, upon their receipt, are damaged, spoiled, or destroyed; or those which have evaporated or been lost by breakage; *Provided,* That in any of the preceding cases the person who alleges that he is not bound to pay the excises shall furnish to the Treasurer of Puerto Rico, within the fifteen (15) days following the date of importation, authentic and unquestionable proof of his right to the exemption; *Provided, further,* That if he does not do so within the term fixed, such consignee or person introducing such effects or objects, shall be obliged to pay on them the excises specified in this Act; . . . "

statute requires.[3] The requirement of conclusive proof of loss within 15 days of importation is clear and categorical, and certainly reasonable. And the evidence is undisputed that Texaco made no claim of loss until 80 odd days after the date the kerosene was spilled into the harbor. The statutory condition for claiming the exemption simply was not complied with and this is fatal to the claim under the generally accepted rule that statutes which create tax exemptions are to be strictly construed against the claimant. This principle also disposes of the argument put forth by Texaco based upon the stipulated fact that an Internal Revenue agent was present at the time of the unloading and was fully aware not only of the loss but also of its extent, for the mere presence of a Treasury agent with knowledge of the loss is far from authentic and unquestionable proof of a loss filed with the Treasurer within 15 days.

 The third and basic question on this appeal is not one of local law. It is whether in 1948 federal law authorized the Puerto Rican Legislature to impose an excise tax on the kerosene lost into the harbor under the circumstances in this case.

In § 3 of the Puerto Rican Organic Act of March 2, 1917, 39 Stat. 953, the Jones Act, Congress forbad the imposition of local export duties but otherwise gave the Legislature of Puerto Rico broad powers to impose taxes of various kinds, including internal revenue taxes, "for the purposes of the insular and municipal governments." Doubts and difficulties, however, arose with respect to the imposition of local taxes on goods while still in the original packages and also while in the control of the postal or customs authorities, and in part to resolve these doubts and obviate these difficulties Congress passed the so-called "Butler Amendment" on March 4, 1927, 44 Stat.

Part II 1418. See West India Oil Co. v. Domenech, 311 U.S. 20, 27, 28, 61 E.Ct. 90, 85 L.Ed. 16 (1940); Buscaglia v. Ballester, 162 F.2d 805, 807 (C.A.1, 1947), for fuller discussion and citation to legislative history.

This amendment, so far as presently pertinent, authorized the local legislature to impose income taxes as well as the other taxes enumerated in § 3 and added to the section the following paragraph:

> *"And it is further provided,* That the internal-revenue taxes levied by the Legislature of Porto Rico in pursuance of the authority granted by this Act on articles, goods, wares, or merchandise may be levied and collected as such legislature may direct, on the articles subject to said tax, as soon as the same are manufactured, sold, used, or brought into the island: *Provided,* That no discrimination be made between the articles imported from the United States or foreign countries and similar articles produced or manufactured in Porto Rico. The officials of the Customs and Postal Services of the United States are hereby directed to assist the appropriate officials of the Porto Rican government in the collection of these taxes."

The Supreme Court of the United States in the West India Oil Co. case at page 28, 61 S.Ct. at page 93, and this court in Buscaglia v. Ballester, 162 F.2d at pages 808 and 809 recognized that the Butler Amendment quoted above authorized the Puerto Rican Legislature to impose taxes which in their practical effect amounted to a customs duty or duty or impost on imports. Yet in neither case was it suggested that Congress in the exercise of its broad powers under the second paragraph of Article IV, Section 3, of the Constitution of the United States to legislate respecting territories could not authorize the local legislature to im-

---

3. Since we hold this to be a valid ground for denying the exemption, there is no occasion for us to consider the alternative ground relied upon by the Supreme Court to the effect that a loss caused by

negligently leaving a valve open is not equivalent to a loss by breakage and that the kerosene had not been damaged, spoiled or destroyed prior to receipt.

pose such taxes. On the contrary, this court in Buscaglia v. Ballester, supra, concluded from the language used by the Court in the West India Oil Co. case that "even though the particular application of the insular general property tax to the appellee's merchandise may make that tax in its effect a duty or impost on imports, nevertheless it is a tax which Congress in the exercise of its plenary power in the premises has authorized the insular legislature to impose." We say the same with respect to the excise tax involved in the case at bar. The appellant's extensive argument that the local excise tax cannot be imposed on the spilled kerosene because as so applied it amounts to a customs duty or duty or impost on an import, must be rejected.

■■ The question now arises whether imposition of the tax in the case at bar violates the anti-discrimination proviso of the Butler Amendment.

Subsection 29 of Section 16 of the local tax statute quoted in footnote 1 does not impose any excise tax on the manufacture of kerosene in Puerto Rico. Under the subsection kerosene locally produced would be subject to tax only when it was "sold, transferred, used, or consumed." Therefore no tax could be imposed on locally manufactured kerosene lost by spillage immediately after its manufacture and before its sale, transfer, use or consumption, whichever might come first. Therefore, should we uphold the tax in this case, there would be disparity in the tax treatment of kerosene spilled in the process of unloading from a vessel and kerosene which might have been locally produced but spilled in the process of production or manufacture in violation of the Butler Amendment proviso.

But counsel agreed at oral argument that no kerosene was produced or manufactured in Puerto Rico in 1948.[4] Thus, there having been no local production of

kerosene, there could have been no actual tax discrimination between the local and the imported product. The statutory discrimination was only theoretical. We do not consider a hypothetical discrimination enough to invalidate the tax. We are not prepared to strike down the excise tax in question because the Legislature of Puerto Rico failed to place a similar tax on a non-existent activity.

Judgment will be entered affirming the judgment of the Supreme Court of Puerto Rico.

---

4. We may take judicial notice from Lummus Company v. Commonwealth Oil Refining Company, Inc., 280 F.2d 915 (C.A. 1, 1960), that an oil refinery was built in Puerto Rico in the mid 1950's and we may presume that it is still operating and producing kerosene. But there will be time enough to explore the local tax statutes as they now read to see whether locally produced kerosene is taxed on a parity with the imported article when, if ever, the occasion may arise.