Santiago A. Panzardi, Inc., substituído por Insular Motor Corporation, demandante y apelado, v. Juan G. Gallardo, Tesorero de Puerto Rico; Santiago A. Panzardi, substituído por Insular Motor Corporation, demandante y apelado, v. Juan G. Gallardo, Tesorero de Puerto Rico; Packard Motor Dealers of Porto Rico, substituído por Insular Motor Corporation, demandante y apelada v. Juan G. Gallardo, Tesorero de Puerto Rico, demandado y apelante.

Nos. 3950, 3951 y 3952.—*Vistos:* Julio 12, 1926. *Resueltos:* Julio 29, 1926.

Contribuciones—Naturaleza y Extensión de la Facultad en General—De los Territorios y su Facultad para Imponer Contribuciones—Contribuciones Sobre Importaciones de los Estados Unidos.—De acuerdo con nuestras leyes vigentes, la Legislatura no puede imponer una contribución que de hecho, como las que dieron origen a estos casos, opere como un derecho de importación sobre artículos introducidos en esta Isla de los Estados Unidos.

Sentencias de *Domingo Sepúlveda,* J. (San Juan), a favor de los demandantes sin costas. *Confirmadas.*

*Hon. Attorney General J. A. López Acosta* y *Felipe Janer Jr.,* abogados del apelante; *Hugh R. Francis* y *Cayetano Coll Cuchí,* abogados de la apelada.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Las cuestiones envueltas en estos tres recursos son exactamente iguales y se estudiarán y resolverán en una sola opinión.

Se trata de contribuciones cobradas de acuerdo con el apartado 18 de la sección 18 del título II de la Ley No. 55 de 15 de junio de 1919, o sea el 5 por ciento *ad valorem,* y pagadas bajo protesta. Las demandas se establecieron para reclamar su devolución.

Parece conveniente transcribir la opinión de la corte de distrito que sirvió de base a las sentencias apeladas. Dice así:

"Llamado este caso a la vista de la excepción previa presentada por la parte demandada, comparecieron las dos partes y 'después de un argumento oral sometieron el caso para su resolución. En dicha vista la parte demandada presentó como único fundamento de su excepción previa el argumento de que el artículo 3 de la Ley Foraker (Apr. 12, 1900, 7 Fed. Statutes Ann. 1259), no está en vigor y que por lo tanto la Legislatura de Puerto Rico tuvo facultades para imponer un impuesto sobre artículos introducidos o traídos a Puerto Rico de los Estados Unidos. La parte demandada argumentó que la opinión de la Corte Suprema de Puerto Rico en cuanto a esta cuestión que consta en el caso de la *Benítez Sugar Co.* vs. *Tesorero,* 34 D.P.R. 36, es un mero dictum y por lo tanto no obliga a esta Corte a resolver que el referido Art. de la Ley Foraker quedó en vigor en vista del art. 58 de la Ley Jones (Marzo 2, 1917, Fed. Stat. Ann. 1918, p. 508.)

"Aunque la opinión de la Corte Suprema de Puerto Rico en el repetido caso de la Benítez Sugar Co. vs. Tesorero de Puerto Rico sea un mero dictum en cuanto a la cuestión planteada en el caso de autos, sin embargo esta Corte opina que debe adoptar dicha opinión de la Corte Suprema de Puerto Rico y declarar sin lugar la excepción previa en el caso de autos.

"No habiéndose planteado otra cuestión alguna y habiendo la parte demandada aceptado los hechos de la demanda y renunciado el derecho de contestar, la Corte procederá a dictar sentencia a favor de la parte demandante sin especial condena de costas."

En el citado caso de *Benítez Sugar Co.*, esta corte por medio de su Juez Asociado Sr. Wolf, dijo:

"Como ha sido presentada por los abogados en este caso la cuestión principal que ha de ser discutida es si la Ley Foraker, en tanto en cuanto prohibe la imposición de una contribución a las importaciones, es todavía la ley de esta jurisdicción después de la aprobación de nuestra actual Ley Orgánica conocida por Acta Jones.

"(1) La Ley Foraker (Apr, 12, 1900, 7 Fed. Stat. Ann., 2nd 1259, Art. 3) prescribía lo siguiente: ·

" '* * * y en ningún caso podrá cobrarse derecho alguno de aduana, después del primer día de marzo de mil novecientos dos, sobre mercancías y artículos que entren en Puerto Rico procedentes de los Estados Unidos y vice-versa.'

"El artículo 58 de la Ley Jones (Mar. 2, 1917, Fed. Stat. Ann. 1918, p. 608) es como sigue:

" 'Art. 58.—Todas las leyes o partes de leyes aplicables a Puerto Rico que no estén en contradicción con cualquiera de las disposiciones de esta Ley, incluyendo las leyes relativas a tarifas, aduanas y derechos de importación en Puerto Rico prescritas por la Ley del Congreso titulada "Ley para proveer temporalmente de rentas y un gobierno civil a Puerto Rico, y para otros fines," aprobada en 12 de abril de 1900, continúa por la presente en vigor, y todas las leyes y partes de leyes incompatibles con las disposiciones de esta Ley, quedan por la presente derogadas.'

"Este artículo en sí parece dejar en vigor el referido artículo que ha sido citado de la Ley Foraker. Nos sentimos obligados a sostener que no hay nada en la Ley Jones que por necesaria deducción originara una derogación del indicado artículo. Tenemos, además, la idea de que fué la intención del Congreso de hacer a Puerto Rico lo mismo que los varios Estados donde las contribuciones a las importaciones de un Estado a otro están excluídas de modo expreso por la Constitución de los Estados Unidos, a saber:

" 'Art. 1, sec. IX, subdivisión 5.—No se impondrán contribuciones o derechos sobre los artículos que se exporten de los Estados.

" 'Id., sec. X, subdivisión 2.—Los Estados no podrán sin el consentimiento del Congreso establecer impuestos o derechos sobre las importaciones y exportaciones, salvo cuando es absolutamente necesario para hacer cumplir sus leyes de inspección; y el producto neto de todos los derechos e impuestos cobrados por un Estado bajo este concepto, pertenecerá al Tesoro de los Estados Unidos, que-

dando sujetas todas esas leyes a la revisión y aprobación del Congreso.'

"(2) Sentado esto, podemos examinar el artículo 18 de la Ley de 1921 (No. 42, julio 1º, p. 299.) Dicho artículo prescribe lo siguiente:

'' '18.—*Vehículos de motor y accesorios.*—Sobre todo vehículo de motor, automóviles, motocicletas, coches laterales para motocicletas, motores para bicicletas y lanchas, auto-camiones, autovagones, carros eléctricos, autos de arrastre y tractores (sin incluir los tractores agrícolas), y sobre toda goma sólida o neumática, tubos interiores, y sobre piezas y accesorios para cualesquiera de los artículos enumerados en este párrafo, que se produzcan, fabriquen, introduzcan o traigan a Puerto Rico. un impuesto de diez (10) por ciento ad valorem.'

"Como indica la apelante, refiriéndose al caso de *Fantauzzi* anotado bajo el nombre de *Sucesores de C. y J. Fantauzzi* v. *La Asamblea Municipal de Arroyo*, 30 D.P.R. 423, estas contribuciones que se trataron de imponer son claramente impuestos o arbitrios. Ellas no tienen por objeto una contribución sobre la propiedad, o una impuesta a la propiedad existente, sino que toda la idea de dicho artículo 18 es llegar a las especialidades como la fabricación o importación y otras semejantes. Convenimos con los abogados de ambas partes en que el mero hecho de que el artículo 18 no emplee la palabra 'importar,' no hace diferencia. Introducir o traer a Puerto Rico es sinónimo de importar." 34 D.P.R. 36–38.

Hemos estudiado los hábiles razonamientos que contiene el alegato de la parte apelada y aunque reconocemos su fuerza no nos convencen de que la conclusión contenida en la decisión del caso de *Benítez Sugar Co., supra,* sea errónea. De acuerdo con las leyes vigentes, no es posible a la Legislatura de Puerto Rico imponer una contribución que de hecho opere, como opera las que dió origen a estos casos, como un derecho de importación sobre artículos introducidos en Puerto Rico de los Estados Unidos.

El caso de *Jordán* v. *Roche*, 228 U. S. 436, citado por la parte apelada, no resuelve la cuestión envuelta. En él se trataba de si el *bay rum* importado de Puerto Rico debería pagar el mismo impuesto federal que tenían que satisfacer otros artículos similares en los Estados Unidos. Y

la cuestión fué resuelta en la afirmativa. No se trataba de un impuesto fijado por uno de los estados de la Unión.

Los otros casos invocados tampoco resuelven la cuestión envuelta en sentido contrario al repetido caso de *Benítez Sugar Co., supra.* Dichos casos son: *Rafferty* v. *Smith, Bell & Co.,* 257 U. S. 226; *United States* v. *Heinszen & Co.,* 206 U. S. 370; *Haavik* v. *Alaska Packers Ass'n.,* 263 U. S. 510, y *Pacific American Fisheries* v. *Territory of Alaska,* 2 F. (2d) 9.

Los dos primeros se refieren a Filipinas. En el de Heinszen, *supra,* la Corte Suprema decidió que el Congreso, en relación con las Islas Filipinas, puede delegar poderes legislativos en aquellos apoderados que se sirva designar y puede ratificar los actos de apoderados tan cumplidamente como si los mismos hubieran sido especialmente autorizados por previa legislación del Congreso, como lo hizo por ley de junio 30, 1906, 34 Stat. 636, por virtud de la cual legalizó y ratificó la imposición de ciertos derechos cobrados por las autoridades americanas ·en las Filipinas ·con anterioridad al 8 de mayo de 1902, y en el de Rafferty, *supra,* la propia Corte Suprema, decidió que: "Las contribuciones sobre el valor de las exportaciones de las Islas Filipinas cobradas en virtud de una Ley Filipina que entró a regir en Julio 1º, 1916 cuando tales impuestos sobre dichas exportaciones estaban prohibidos por la Ley del Congreso de Agosto 29, 1916, c. 416, 39 Stat. 545, fueron legalizadas, ratificadas y confirmadas por la Ley del Congreso de Junio 5, 1920, c. 253, 41 Stat. 1015, 1025, p. 231."

El Congreso no ha actuado en relación con la ley puertorriqueña. Podría ratificarla si esa fuera su voluntad, pero mientras esa voluntad no se exprese de modo positivo, es el deber 'de esta corte resolver que la ley puertorriqueña es contraria a la letra y al espíritu de la primera Ley Orgánica de la Isla, sin que se encuentre en la segunda nada que desvirtúe en ese respecto la primera.

Las otras dos decisiones se refieren a Alaska y tratan

de un *license tax* sobre corporaciones de otros estados para hacer negocios en el territorio. En el de *Haavik, supra,* se resolvió que "una contribución anual *per capita* y una contribución de patente anual impuesta sólo sobre los pescadores no residentes, dentro de Alaska, están comprendidas en la facultad delegada en la Legislatura de Alaska por la Ley Orgánica," y que "dichas contribuciones, al aplicarse a un ciudadano de California que se marchó a Alaska para dedicarse al negocio de la pesca y allí se quedó cuatro meses, así dedicado, no están en conflicto con la cláusula del debido procedimiento contenida en la Quinta Enmienda; ni tampoco la contribución de patente, impuesta sólo sobre los no residentes, infringe la disposición sobre 'privilegios e inmunidades' (Constitución, Art. IX, sec. 2); ni era arbitrario ni irrazonable favorecer a los residentes al excusarlos de ella." Y en el de Pacific American Fisheries, *supra,* se decidió que la ley de Alaska "imponiendo una contribución de patente sobre los establecimientos empacadores no es nula como interruptora del comercio entre estados, al aplicarse a una corporación extranjera que se dedica a empacar pescado para su transportación y venta fuera de Alaska."

Como puede verse tampoco esos casos establecen una jurisprudencia tal que pueda entenderse por ellos resuelta o por lo menos esclarecida de tal modo la cuestión envuelta que debamos variar nuestra opinión.

Un estudio del caso de *Gromer* v. *Standard Dredging Co.,* 224 U. S. 362, nos lleva a igual conclusión.

Parece conveniente terminar transcribiendo los dos párrafos que siguen de la opinión emitida por la Corte de Circuito del Primer Circuito en el caso de *Benedicto* v. *West India & Panama Telegraph Co.,* 256 F. 417, citado por la parte apelada en su alegato. Son así:

"Es perfectamente posible, existiendo una clara intención, que —bajo reglas liberales de interpretación y considerando casos tales como el de Metropolitan Railroad v. District of Columbia, 132 U.

S. 1, 9, 10 Sup. Ct. 19, 22 (33 L. Ed. 231), en el que se dijo que 'Es indudablemente cierto que el Distrito de Columbia es una comunidad política separada en cierto sentido, y en tal sentido se le puede llamar un estado'—Puerto Rico pudiera ser aceptado como un estado para ciertos fines limitados, pero no creemos claro, considerando las relaciones que existen entre los Estados Unidos y dicha Isla, y sin entrar a considerar si tales relaciones son las de una posesión o de un cuasi-territorio, que fuera la intención del Congreso delegar facultades en la asamblea local para regular las tarifas con respecto a medios de comercio entre Puerto Rico y los Estados Unidos o países extranjeros.

"La conclusión es que aunque el Congreso, bajo sus poderes plenarios, tenía el derecho indiscutible de hacerlo así, jamás ha delegado en la asamblea legislativa de Puerto Rico facultad para regular las tarifas de cables entre posesiones, entre territorios, entre estados o extranjeros. * * * ''

*Deben confirmarse las sentencias apeladas.*