Porto Rico Telephone Co., peticionaria, *v.* Tribunal de Contribuciones de Puerto Rico, demandado; R. Buscaglia, Tesorero de Puerto Rico, interventor.

Núm. 99.—*Sometido:* Junio 5, 1947. *Resuelto:* Febrero 6, 1948.

156

*Sifre, Franceschi & Sifre* y *Rafael Pastor,* abogados de la peticio-
naria; *Hon. Procurador General Luis Negrón Fernández* y *J.
B. Fernández Badillo, Procurador General Auxiliar,* abogados del
interventor, querellado en el pleito principal.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tri-
bunal.

Entre el 30 de marzo de 1943 y el 30 de marzo de 1944,
la peticionaria trajo a Puerto Rico ciertos artículos para
usarlos en su negocio telefónico en esta isla. El inciso 20
de la sección 16 de la Ley de Rentas Internas, según fué en-
mendada por la Ley núm. 25, Leyes de Puerto Rico, 1942,
Segunda y Tercera Sesiones Extraordinarias (pág. 127) y la
Ley núm. 116, Leyés de Puerto Rico 1943 (pág. 335), im-
pone una contribución pagadera por una sola vez, sobre la
venta o uso en Puerto Rico de tales artículos. La contri-
bución es del 15 por ciento sobre el precio de venta en Puerto
Rico. A los fines de determinarla, el "precio de venta" se
define en la sección 4, según fué enmendada por la Ley núm.
25, como el costo de los artículos, más los gastos incurridos
en su transportación a la isla, más un beneficio razonable
estimado en un 20 por ciento.[1]

La peticionaria admite que el Tesorero tenía derecho a
cobrar aquella parte de la contribución sobre uso ascendente
a 15 por ciento sobre estos artículos, calculada obteniendo
el 15 por ciento del costo de los artículos más los gastos de
su transportación a Puerto Rico. Pero alega que el adicio-

[1] El artículo 4 fué enmendado por la Ley núm. 72, Leyes de Puerto Rico,
1945 (pág. 271), pero dicha enmienda no afecta este caso.

narle un beneficio estimado del 20 por ciento a la base tributable, priva a la peticionaria de su propiedad sin el debido procedimiento de ley, en violación del artículo 2 de la Carta Orgánica, 48 U.S.C., sec. 737.

La peticionaria pagó toda la contribución pero radicó entre otras una reclamación de reintegro ascendente a $19,749.91. Esta suma representa aquella porción de la contribución que resulta al incluir, como una de las partidas que forman la base tributable, la partida de un 20 por ciento como beneficio estimado. El Tesorero denegó la reclamación de reintegro. El caso se encuentra ante nos en *certiorari* para revisar la decisión del Tribunal de Contribuciones desestimando la querella de la peticionaria para recobrar esta suma.

Al impugnar como nulo el requisito de que la base tributable de la contribución sobre uso incluirá un beneficio estimado del 20 por ciento, la peticionaria descansa en parte en ciertos casos estatales que envuelven contribuciones sobre la propiedad. Por tanto, examinaremos primeramente su contención de que la contribución aquí impuesta es una contribución sobre la propiedad más bien que un arbitrio.

La peticionaria admite que el inciso 20 no impone generalmente una contribución sobre la propiedad. Sin embargo, alega que al aplicarse a estos artículos específicos, la contribución es una contribución sobre la propiedad, ya que fueron introducidos en Puerto Rico únicamente para ser usados por la peticionaria en su negocio telefónico y no tienen aquí valor alguno en el mercado.

Nos parece que el argumento de que el inciso 20 impone una contribución sobre la propiedad a estos artículos carece enteramente de base. En primer lugar la propia Legislatura le da el nombre de arbitrio a esta contribución. Título Segundo, Ley núm. 85, Leyes de Puerto Rico, 1925 (pág. 585); sección 4 de la Ley núm. 85, según fué enmendada por la núm. 25 de 1942. Si bien el nombre dádole por la Legislatura no es concluyente, sí tiene derecho a que se le

conceda gran peso en ausencia de lenguaje en contrario en el estatuto. *Lutz* v. *Arnold,* 193 N. E. 840 (Ind., 1935); *Ingels* v. *Riley,* 53 P.2d 939 (Calif., 1936); *Douglas Aircraft Co.* v. *Johnson,* 90 P.2d 572 (Calif. 1939); *Head* v. *Cigarette Sales Co.,* 4 S. E.2d 203 (Ga., 1939).

Pero el lenguaje específico del estatuto mediante el cual se impone el arbitrio es más importante que el nombre dádole por la Legislatura a la contribución. La diferencia entre contribuciones sobre la propiedad y arbitrios se ha expuesto claramente en muchas ocasiones. Una contribución sobre la propiedad se impone a la posesión de propiedad propiamente dicha, independientemente del derecho o privilegio de venderla o usarla; surge anualmente; su pago recae en quienquiera sea el dueño de la propiedad en determinada fecha; y consta de un por ciento fijo sobre el valor de la propiedad, según éste se determine mediante tasación. Por otro lado, un arbitrio se impone sobre el ejercicio de un privilegio, tal como venta o uso; surge una sola vez, no anualmente; no está ligado a ningún día contributivo específico; y se impone sin tasación alguna. Anotaciones, 103 A.L.R. 18; 129 A.L.R. 222; 153 A.L.R. 609.

Parece claro fuera de toda duda que el arbitrio del 15 por ciento impuesto por el inciso 20 sobre el privilegio de usar estos artículos en Puerto Rico, es un arbitrio más bien que una contribución sobre la propiedad. El peso de las autoridades caracteriza tal contribución como un arbitrio. *Henneford* v. *Silas Mason Co.,* 300 U. S. 577, 582, y casos allí citados; *Steward Machine Co.* v. *Davis,* 301 U. S. 548, 573; *Douglas Aircraft Co.* v. *Johnson,* supra; *Head* v. *Cigarette Sales Co.,* supra; *Banner Laundering Co.* v. *Gundry,* 298 N. W. 73 (Mich., 1941); *Vancouver Oil Co.* v. *Henneford,* 49 P.2d 14 (Wash., 1935); *National Linen Service Corp.* v. *State Tax Com'n,* 186 So. 478 (Ala., 1939); 24 Calif. L. Rev. 175; *Annotations,* 103 A.L.R. 18; 129 A.L.R. 222; 153 A.L.R. 609.

En el caso de *West India Oil·Co.* v. *Gallardo,* 6 F.2d 523 (C.C.A. 1, 1925), al considerar un estatuto puertorriqueño similar, la Corte de Circuito dijo a las páginas 525-6: "Creemos que claramente éste es un arbitrio sobre venta o uso, y no una contribución sobre importaciones. Analizándolo, la única base para el elaborado argumento de la apelante se encuentra en el hecho de que la mayoría de los artículos de bienes muebles sujetos a este arbitrio constituye importaciones en Puerto Rico, debido a que dicha isla es principalmente un país agrícola o productor de materia prima con pocas fábricas. Pero este hecho económico no afecta la naturaleza legal del arbitrio. . . . De igual manera, es insostenible la contención de que éste es una contribución sobre la propiedad, siendo nula por falta de uniformidad. La contribución se impone sobre automóviles 'manufacturados, vendidos o usados en Puerto Rico'. No es una contribución sobre posesión según ésta se distingue de la producción, venta o uso." Al mismo efecto, *West India Oil Co.* v. *Sancho,* 108 F.2d 144 (C.C.A. 1, 1939), confirmado en *West India Oil Co.* v. *Domenech,* 311 U. S. 20.

De igual manera, hemos reconocido en nuestros casos que nuestra contribución sobre venta o uso es un arbitrio y no una contribución sobre la propiedad, y hemos indicado la distinción entre (1) nuestra contribución general *ad valorem* sobre bienes muebles impuesta el 15 de enero al dueño en dicha fecha para el próximo año fiscal, de conformidad con el artículo 297 del Código Político, y (2) las contribuciones sobre venta y uso impuestas por la Ley de Rentas Internas sin tasación y sin referencia a fecha alguna. *Ballester* v. *Buscaglia,* 66 D.P.R. 560, 582-83, revocado por otros motivos, 162 F.2d 805 (C.C.A. 1, 1947), *certiorari* denegado, 332 U. S. 816; *Varcárcel* v. *Sancho, Tes.,* 61 D.P.R. 213; *West India Oil Co. (P. R.)* v. *Tesorero,* 54 D.P.R. 732 confirmado en 108 F.2d 144 y 311 U. S. 20; *West India Oil Co. (P. R.)* v. *Benítez, Admor.,* 51 D.P.R. 273; *Benítez Sugar Co.* v. *Aboy, Tes.,* 34 D.P.R. 36; *Panzardi et al* v. *Gallardo,* 35 D.P.R. 947; *Flores Alvarez & Co.* v. *Gallardo,* 36 D.P.R. 117.

No vemos la pertinencia de los hechos en que descansa la peticionaria; es decir, que trajo esos artículos a Puerto Rico donde, según alega, no hay valor en el mercado para ellos. Estos hechos no convierten la contribución sobre uso en una contribución sobre la propiedad. La contribución todavía es sobre el privilegio del uso aquí y como tal es un arbitrio.

 Pasemos ahora a la contención de la peticionaria de que la contribución impuesta por el inciso 20 es una *ad valorem* más bien que una específica. Aquí también los casos han hecho patente la diferencia entre estas dos clases de contribuciones. Una contribución *ad valorem* consiste de una proporción fija del valor de la propiedad; requiere la intervención de tasadores para determinar el valor de la propiedad; y se provee un procedimiento cuasi judicial para litigar la valoración hecha por los tasadores. En contraste, una contribución específica es una suma fija obtenida mediante un cálculo matemático de conformidad con una fórmula provista por el estatuto y no requiere tasación de valor. *Pingree* v. *Auditor General,* 78 N. W. 1025 (Mich., 1899); *Commonwealth* v. *A. Overholt & Co.,* 200 A. 849 (Pa., 1938); *Shivel* v. *Vidro,* 294 N.W. 78 (Mich., 1940); *Magnolia Petroleum Co.* v. *Oklahoma Tax Commission,* 106 P.2d 829 (Okla., 1940); *Powell* v. *Maxwell,* 186 S. E. 326 (N. C., 1936).

El importe de la contribución sobre uso impuesta por el inciso 20 se obtiene por un simple cálculo matemático sin necesidad de tasación del valor de los bienes: la contribución es del 15 por ciento del costo de los artículos más el costo de transportación más un 20 por ciento de beneficio estimado. Por tanto, parecería obvio que el inciso 20 impone una contribución específica y no una *ad valorem*. Sin embargo, la peticionaria descansa en el último párrafo de la sección 4 que dispone que ''la frase 'ad valorem' para los fines de esta ley y otras leyes vigentes fijadoras de una contribución de arbitrios o de venta, se interpretará como sig-

nificativa del 'predio de venta' del artículo o mercancía, según se define en esta sección.''

Ya hemos visto que si bien el nombre que se dé a un estatuto merece gran peso, éste no es decisivo. El funcionamiento práctico de una contribución predomina sobre su nombre descriptivo. *Harvester Co.* v. *Dept. of Treasury,* 322 U. S. 340, 346; *Harvester Co.* v. *Dept. of Taxation,* 322 U. S. 435, 441. Debemos abstenernos de la nomenclatura y penetrar más allá del nombre que se dé a la cosa descrita.

Es innecesario que determinemos por qué la Legislatura optó por designar los arbitrios impuestos por la Ley de Rentas Internas sobre la venta y uso de artículos, como contribuciones *ad valorem.* Si bien la frase *ad valorem* es un término de arte, aquí la Legislatura la usó sin arte alguno. El nombre empleado por la Legislatura no altera el hecho de que en efecto impuso una contribución específica y no una *ad valorem,* ya que esta contribución surge de una simple operación aritmética que no requiere tasación alguna.

La peticionaria ha revuelto una tempestad terminológica en un vaso de agua aferrándose con tenacidad al inadecuado nombre dado por la Legislatura a esta contribución. Pero el lenguaje significa lo que dice, no lo que se le llame. Y los casos antes citados demuestran que siempre se ha entendido con claridad en esta jurisdicción que la contribución general *ad valorem* sobre bienes muebles, basada en tasación, se impone una vez al año, de conformidad con el artículo 297 del Código Político, mientras que bajo la Ley de Rentas Internas los arbitrios se imponen sólo una vez sin tasación, sobre el privilegio de venta o uso y se calculan mediante una simple fórmula matemática.

Toda vez que hemos llegado a la conclusión de que el arbitrio aquí impuesto no es una contribución sobre la propiedad, es innecesario examinar los numerosos casos estatales citados por la peticionaria que envuelven disposiciones constitucionales estatales para contribuciones sobre la propiedad. De igual manera, como este arbitrio no es una contri-

▮▮▮▮▮▮▮

bución *ad valorem,* no creemos necesario explorar la conten-ción de la peticionaria al efecto de que como tal contribu-ción *ad valorem,* la contribución en este caso fué impuesta indebidamente, ya que según se alega se impuso sin tomarse en cuenta el valor. (²)

▮▮▮▮▮ La peticionaria sigue alegando que aun si se consi-derara esta contribución como un arbitrio, éste es nulo por-que priva a la peticionaria de su propiedad sin el debido procedimiento de ley. En su alegato original, el único ar-gumento aducido por la peticionaria en apoyo de esta con-tención, fué que no había base razonable para incluir en la misma clasificación a un importador que introduce artículos en Puerto Rico para la reventa y a la peticionaria, que trae materiales a la isla para usarlos en su negocio telefónico.

La Corte Suprema de los Estados Unidos hace tiempo que ha rechazado este argumento. Los casos han tratado principalmente de consideraciones sobre la cláusula de co-mercio que no pueden surgir en esta jurisdicción. *Ballester* v. *Buscaglia,* supra. Pero algunos de ellos también resuel-ven que para los fines del debido procedimiento, un arbitrio de uso puede ser impuesto constitucionalmente por un es-tado sobre artículos comprados fuera de dicho estado con el fin de complementar un arbitrio de venta sobre artículos comprados dentro del estado. Tal arbitrio de uso tiene dos objetivos principales: (1) Poner a los vendedores dentro del estado en condiciones de competir en iguales términos con vendedores en otros estados; (2) Impedir que el estado pierda ingresos por arbitrio de venta procedente de aquellos compradores que en ausencia de un arbitrio de uso se in-clinarían a comprar en otro sitio para evitar el arbitrio de venta. *Henneford* v. *Silas Mason Co.,* supra, y casos allí citados; *Southern Pac. Co.* v. *Gallagher,* 306 U. S. 167; *Pa-*

---

(²)Sin embargo, luego examinamos esta última contención con respecto al punto de constitucionalidad. Como veremos, el argumento de la peticionaria es que el beneficio estimado del 20 por ciento es una cifra arbitraria que nada tiene que ver con los hechos actuales.

*cific Tel. Co.* v. *Gallagher,* 306 U. S. 182; *Bacon & Sons* v. *Martin,* 305 U. S. 380; *General Trading Co.* v. *Tax Comm'n.,* 322 U. S. 335, y casos allí citados; *Harvester Co.* v. *Dept. of Treasury,* supra; Powell, *New Light on Gross Receipts Taxes,* 53 Harv. L. Rev. 909, *More Ado About Gross Receipts Taxes,* 60 Harv. L. Rev. 501, 710; véase *Puerto Rico Ilustrado* v. *Buscaglia,* 64 D.P.R. 914, 939–41, 948–50.

La equivalencia económica es el nervio que corre a través de un estatuto que impone arbitrios sobre el uso. Un estado puede imponerle un arbitrio al ejercicio del privilegio de realizar una transacción de venta; puede imponer un arbitrio al diferente pero similar privilegio de usar un artículo en un estado después de haberlo comprado en otro sitio. En uno u otro caso, dentro de su demarcación ocurre un incidente o evento tributable. Si bien los competidores pagan sobre diferentes actividades, el arbitrio es el mismo para uno que compra en un estado comparado con uno que compra fuera de dicho estado.

Aquéllos que compran artículos en otro sitio y los usan en Puerto Rico disfrutan de nuestros recursos naturales, del trabajo de nuestro pueblo y de los servicios y protección de nuestro gobierno. Tal mercancía debe pagar su parte proporcional de las contribuciones. Un arbitrio de uso junto a un arbitrio de venta distribuye el peso de este método de levantar ingresos uniformemente entre artículos vendidos en Puerto Rico y artículos comprados en otro sitio para usarse aquí. Además, no hay razón constitucional que obligue a la Legislatura a poner a los vendedores locales en una desventaja en la competencia con los vendedores de fuera del estado.

De ser necesario algo más, la Ley Butler por implicación reconoce el derecho de Puerto Rico a no solamente imponer un arbitrio de venta, si que también complementarlo con un arbitrio de uso sobre artículos comprados fuera de Puerto Rico para usarse aquí. Véase *Ballester* v. *Buscaglia,* supra.

En su alegato de réplica la peticionaria amplía su contención de que el arbitrio aquí impuesto es nulo. Ataca como arbitraria y caprichosa la fórmula adoptada por la Legislatura para determinar la base tributable del arbitrio de uso. Como hemos visto, el importador debe calcular el arbitrio del 15 por ciento sobre una base obtenida sumando tres partidas: (1) costo de los artículos; (2) costo de la transportación de éstos a Puerto Rico; (3) un beneficio estimado del 20 por ciento.

La peticionaria arguye que la inclusión en la base tributable del beneficio estimado del 20 por ciento es nula por el fundamento de que no tiene relación con el precio de venta de los artículos en el mercado local. Su argumento es que la Legislatura no puede hacer caso omiso de la cifra verdadera envuelta en uno de los elementos del precio de venta y sustituirla mediante fíat legislativo por una cifra arbitraria.

Empezaremos por indicar que en este razonamiento está implícita la contención de que el beneficio estimado del 20 por ciento es de igual manera arbitrario y nulo para los arbitrios de venta sobre ventas en Puerto Rico. Es decir, esta partida existe en la fórmula estatutaria para el arbitrio de uso únicamente para equiparar el primero con el arbitrio de venta. Si resolviéramos que es arbitrario incluirla al calcular la base para el arbitrio de uso por el motivo expuesto por la peticionaria, necesariamente resultaría que el arbitrio de venta, si bien no envuelto en este caso, sufriría del mismo defecto.

Al examinar nuestro arbitrio de venta, encontramos que se le impone por ley al vendedor. Contrario a la situación en algunos estados, al vendedor ni se le prohibe ni se le exige que añada el arbitrio al precio de venta. Se le permite que haga lo que desee. Bajo dichas circunstancias, si bien un vendedor ocasionalmente absorverá parte o todo el arbitrio debido a la competencia o por algún otro motivo, en la ma-

yoría de los casos, y forzado por razones económicas, el vendedor le endosa el peso del arbitrio al consumidor. Véanse *Puerto Rico Ilustrado* v. *Buscaglia*, supra, págs. 944-45, nota 37; *National Linen Service Corp.* v. *State Tax Commission,* supra.

Al buscar una fórmula para imponer un arbitrio de uso que tenga la equivalencia económica de tal arbitrio de venta, la Legislatura no venía obligada a cerrar sus ojos a la realidad de que si bien el arbitrio de venta se impone por ley sobre el vendedor, en la mayoría de los casos su impacto económico recae en el comprador. En su consecuencia la Legislatura tenía poder para crear un arbitrio de uso que iguale para las ventas fuera del estado el impacto económico del arbitrio de venta sobre ventas locales. Es inmaterial que, como un método práctico de cobro bajo los artículos 37 y 39 de la Ley de Rentas Internas (según fué enmendada por la Ley núm. 83, Leyes de Puerto Rico, 1931 [pág. 505], y Ley núm. 116, Leyes de Puerto Rico, 1943 [pág. 335], respectivamente), el importador-vendedor sea en la mayoría de los casos responsable por el arbitrio de venta después de haber introducido los artículos en Puerto Rico y antes de la venta, y luego le endose el arbitrio al comprador como parte del precio de venta; mientras que bajo el artículo 38, según fué enmendado por la Ley núm. 83, y bajo el artículo 40, el arbitrio de uso se paga directamente por el comprador después que se introduce la mercancía para usarse.(3) Lo que importa es que tanto los arbitrios de venta como de uso son en su impacto final arbitrios sobre el consumidor; y toda vez que estipulan el pago al mismo tipo sobre una base tributable calculada de acuerdo con la misma fórmula, tienen precisamente el mismo resultado económico.

---

(3) Si bien no afectan este caso, véanse también la Ley núm. 78, Leyes de Puerto Rico, 1945 (pág. 289), que enmendó el artículo 39 de la Ley de Rentas Internas, y la Ley núm. 58, Leyes de Puerto Rico, 1945 (pág. 213), que creó una nueva sección, la núm. 69 de la Ley de Rentas Internas.

■ Con este historial en mente, pasemos a la objeción de la peticionaria al efecto de que la inclusión de la partida de un beneficio estimado del 20 por ciento en la base tributable para determinar el arbitrio de uso, es arbitraria y discriminatoria al aplicarse a los artículos específicos envueltos en este caso. Aquí, el hecho de que el arbitrio de venta se pague por el vendedor inmediatamente después de la introducción y antes de la venta, es importante a los fines de comprender la fórmula establecida por la Legislatura para calcular la base tributable tanto del arbitrio de venta como del de uso. Si la Legislatura hubiera querido posponer el cobro del arbitrio de venta hasta que tuviera lugar la venta al comprador, no hubiera habido problema en relación con la base tributable: habría hecho del propio precio de venta la base tributable. Pero como la Legislatura quiso disponer que el arbitrio de venta fuera cobrado antes de la venta, era necesario hacer un estimado del precio de venta que el vendedor en última instancia le pondrá a los artículos introducidos por él para la reventa. Para este propósito, la Legislatura adoptó la fórmula de que el precio de venta será calculado añadiéndole al costo de la mercancía más el costo de la transportación, un beneficio estimado del 20 por ciento. Esto es necesariamente un estimado; la partida exacta no está a la mano porque el arbitrio se cobra antes de que ocurra el evento contributivo—la venta.

La Legislatura caracterizó esta partida del 20 por ciento como un beneficio estimado razonable. Esta es una caracterización algo imprecisa. Si se interpretara como que significa ingreso neto, concebiblemente podríamos convenir con la peticionaria en que era arbitraria y caprichosa. Pero el método de calcularla demuestra que hablando estrictamente es un aumento al costo y no un ingreso neto. Pare vender mercancía, un vendedor tiene muchos otros gastos que debe deducir del ingreso que él recibe de la venta de dicha mercancía antes de que pueda determinar su ingreso neto. Toda vez que el 20 por ciento es calculado solamente sobre el

costo de la mercancía más la transportación, es obvio que este 20 por ciento sólo representa un aumento y no ingreso neto.

Sin embargo, aun tratando este 20 ciento como un aumento en el precio y no como ingreso neto, debe admitirse que como una partida inflexible, no corresponde a los hechos verdaderos en cada caso. Algunos artículos se venden indudablemente con un aumento mayor o menor que el 20 por ciento del costo más la transportación. Pero confrontada con la necesidad de establecer un estimado razonable del aumento que como cuestión de hecho se haría en alguna fecha futura con el fin de cobrar el arbitrio antes de la venta, la Legislatura venía obligada a elegir alguna cifra. En ausencia de prueba en contrario, debemos presumir que la elegida se aproxima al aumento verdadero en la venta promedio. Nada ha sido traído ante nuestra atención que demuestre que el aumento de 20 por ciento carece enteramente de base en la mayoría de los casos.

No estamos insinuando que la Legislatura puede incluir una cifra arbitraria como uno de los elementos de una base tributable. Pero en asuntos contributivos no se exigen sutilezas. *Sánchez Morales & Co.* v. *Gallardo,* 18 F.2d 550 (C.C.A. 1, 1927); *Welch* v. *Henry,* 305 U. S. 134, 145; *Madden* v. *Kentucky,* 309 U. S. 83, 88. Y como nada hay ante nos que demuestre que el 20 por ciento del costo de los artículos, más la transportación, no es una aproximación razonable del aumento que de hecho se hace en la venta promedio, no podemos resolver que la disposición en el estatuto para un aumento del 20 por ciento es nula porque en algún caso un contribuyente específico quizás pudo demostrar que su aumento era un poco menos. En verdad pudiera ser que para otros contribuyentes pueda haber una ligera ventaja porque su aumento sea un poco más del 20 por ciento. Esta podría no ser la mejor fórmula que la Legislatura pudiera diseñar. Por ejemplo, quizá el aumento debería ser de 18 por ciento a 22 por ciento. Pero bajo las circunstan-

cias una cifra promedio aproximada que afecte a los contribuyentes sustancialmente en la misma forma no es arbitraria o discriminatoria.

También debe notarse que la base tributable contenida en la fórmula estatutaria cumple con el propósito adicional de eliminar la necesidad de que los vendedores en Puerto Rico lleven y el Tesorero examine records complicados y detallados demostrativos, a los fines del arbitrio de venta, de los precios de venta verdaderos.

El caso de *West India Oil Co.* v. *Gallardo,* supra, no resolvió lo contrario. Allí el estatuto disponía un aumento similar del 10 por ciento a menos que se probara a satisfacción del Tesorero que el aumento actual era menos del 10 por ciento. La Corte de Circuito dijo a la página 526 que esta disposición contemplaba una vista del Tesorero en una capacidad cuasi-judicial, e indicó que las cortes de distrito tenían poder para revocar la decisión del Tesorero. Pero nada encontramos en dicho caso que resuelva o insinúe que el establecer un aumento promedio, a ser aplicado a todos los casos, sea nulo.

Lo antes expuesto ha sido dirigido más a la cuestión de la validez del aumento del 20 por ciento en relación con el arbitrio de venta que al problema presentado por dicho aumento al imponer el arbitrio de uso. Pero toda vez que la validez del arbitrio de uso como tal está predicada en su equivalencia económica al arbitrio de venta, un examen preliminar del aumento del 20 por ciento según éste se aplica al arbitrio de venta no podría evitarse, a pesar del hecho de que este caso envuelve el cobro del arbitrio de uso y no el de venta.

Una vez que hemos concluído que el aumento del 20 por ciento es válido a los fines del arbitrio de venta, es aparente que el mismo aumento puede añadirse al costo más la transportación con el fin de cumplir los objetivos de un arbitrio de uso. Como hemos visto, la Legislatura puede obligar a los compradores de mercancía fuera del estado para usarla

aquí, a asumir su participación en el pago de las contribuciones y puede proteger a los vendedores locales de desventaja en la competencia imponiendo a los primeros arbitrios de uso equivalentes para complementar los arbitrios de ventas locales. No constituye contestación al problema afirmar, según dice la peticionaria en este caso, que toda vez que el importador no realiza ganancia alguna en materiales que trae para su propio uso, el incluir en la base tributable un aumento para beneficio estimado es arbitrario toda vez que no guarda relación con los hechos. Si fuera válido ese argumento, el arbitrio de uso nunca podría equipararse verdaderamente al arbitrio de venta. Pero si la Legislatura puede incluir el aumento al establecer una base tributable para el arbitrio de venta, necesariamente tiene que tener el poder para igualar la situación proveyendo una cosa similar para el arbitrio de uso. La fórmula, como hemos visto, es si el arbitrio de uso es el mismo en su impacto económico para el consumidor, como si los artículos se hubieran vendido aquí y el arbitrio de venta se hubiera pagado. Habiendo llegado a la conclusión de que el incluir un aumento de 20 por ciento en la base tributable es válido al imponerle contribuciones a las ventas aquí, necesariamente tenemos que resolver que es incluído propiamente en la base tributable sobre la cual se calcula el arbitrio de uso.(⁴)

▃▃▃▃▃ De igual forma, el argumento de la peticionaria que el equipo telefónico no tiene valor en el mercado de Puerto Rico no procede. En primer lugar, ni el arbitrio de venta ni el de uso son, estrictamente hablando, arbitrios sobre el valor en el mercado. Este último es lo que un com-

---

(⁴)*Cf.* el lenguaje que se emplea en *Fitch Co.* v. *United States,* 323 U.S. 582, 586-7: "Se arguye que esta conclusión resulta en un discrimen contra el fabricante que lleva a cabo sus propias campañas de anuncios y de ventas y a favor de aquél cuyos productos son anunciados por sus clientes, y que tal discrimen no puede haber, sido la intención del Congreso. Pero este discrimen, hasta donde puede existir, es una consecuencia inevitable de un arbitrio basado en el precio de venta al por mayor. Tales factores de costo como mano de obra, materiales y anuncios varían naturalmente entre fabricantes compe-

prador voluntario estaría dispuesto a pagar y un vendedor voluntario estaría dispuesto a recibir, en una fecha específica. *Mayagüez Sugar Co.* v. *Sancho,* 64 D.P.R. 734; *Baetjer* v. *Uinted States,* 143 F.2d 391 (C.C.A. 1, 1944). Aquí, sin hacer referencia a las fluctuaciones del mercado, un vendedor debe pagar un arbitrio basado en la fórmula contenida en el artículo 4 el que, si bien se aproxima al precio en el mercado, no provee para las alzas o bajas del valor en lo que se efectúa la venta.

Pero aun si no existiera esta diferencia entre el valor en el mercado y la base tributable estatutaria, no convenimos en que el arbitrio de uso, en tanto en cuanto incluye en su base un aumento del 20 por ciento, es nula porque no exista en Puerto Rico mercado para el equipo telefónico. Una vez más la fórmula es pragmática. Mercancía no vendida en Puerto Rico—ya exista o no aquí un mercado para ella—es tributada por el privilegio de usarse aquí después de comprarse en otro sitio al mismo tipo y con la misma base tributable.como si se hubiera comprado aquí. No vemos discrimen alguno contra la peticionaria al requerírsele que pague contribuciones al mismo tipo calculado sobre la misma base tributable tanto por artículos que compre en Puerto Rico como por artículos que compre fuera de Puerto Rico para usarse en esta isla porque no se puedan obtener aquí.

█ La peticionaria arguye que si la Legislatura puede arbitrariamente fijar el 20 por ciento como aumento podría en alguna fecha futura fijarlo en 200 por ciento. Esto es reminiscencia del argumento de que si se sostuviera una contribución del 2 por ciento sobre el ingreso neto, la Legislatura

tidores; costos y métodos diferentes de hacer negocios pueden causar en cambio el que los precios de venta al por mayor carezcan de uniformidad. Y si estos precios se tributan sin un ajuste para los diferentes factores de costo, iniquidades contributivas y discrímenes resultarían inevitablemente. Pero cuando, como ocurre en este caso, se le impone un arbitrio fijo a los precios de venta al por mayor y no se aprueban disposiciones estatutarias para remediar las naturales iniquidades contributivas que de ello resultan, las cortes no tienen poder para suplirlas imputándole al Congreso una intención no expresada de lograr la uniformidad contributiva entre fabricantes que vendan al por mayor.''

podría algún día imponer el ciento por ciento sobre dicho ingreso. El que una ley contributiva sea confiscatoria es cuestión de grado. Las cortes no tienen poder para declarar nula una contribución actual, cuya arbitrariedad no se haya demostrado, porque un contribuyente tema que algún día la Legislatura puede aprobar la misma contribución con un tipo que sea realmente arbitrario. *Ballester* v. *Tribunal de Apelación de Contribuciones,* 61 D.P.R. 474, 506–11, confirmado en 142 F.2d 11 (C.C.A. 1, 1944), certiorari denegado, 323 U. S. 723.

*La decisión del Tribunal de Contribuciones será confirmada.*

El Juez Asociado Sr. Marrero no intervino.